## F. JAMES SENSENBRENNER, JR., AND CHERYL WARREN SENSENBRENNER

### v.

## RUST, ORLING & NEALE, ARCHITECTS, INC. AND KDI SYLVAN POOLS, INC.

Record No. 880249

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice

420

*Michael Joseph Gartlan* for appellants.
*Michael McGettigan (David C. Schroeder; Murphy, McGettigan & West, P.C.*, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

Pursuant to Rule 5:42, the United States Court of Appeals for the Fourth Circuit, on March 2, 1988, certified to this Court two questions of Virginia law, which we accepted by order entered May 5, 1988. The certified questions were stated as follows:

1. Does Virginia law permit recovery by a home purchaser against the pool installer and the architect for damages to the indoor swimming pool and to the foundation of the house caused by a leaking pool, where the pool installer and the architect were not in privity of contract with the home purchaser, on the basis that the damages were injuries to property and not economic losses?

2. Whether, if the indoor swimming pool and its separate room enclosure were built against the house but outside its foundation, would that fact in any way affect the result?

The facts are stated as set forth in the complaint filed in the federal court and in the certificate. On October 3, 1984, F. James Sensenbrenner, Jr., and Cheryl Warren Sensenbrenner (the plaintiffs) entered into a contract with O'Hara and Company, Inc. (O'Hara) under which O'Hara would construct a new home for the plaintiffs on a lot in the city of Alexandria. The home was to include an enclosed swimming pool. Rust, Orling & Neale, Architects, Inc. (the architect) was to design the home, including the pool and its enclosure. The plaintiffs contracted only with O'Hara, who in turn contracted with the architect.

After the architect had furnished the requisite plans, O'Hara subcontracted the construction of the pool to KDI Sylvan Pools, Inc. (the pool contractor). The work was completed in the summer of 1985 and O'Hara conveyed the property to the plaintiffs at a closing held on August 15, 1985.

Plaintiffs allege that due to negligent design and supervision by the architect and negligent construction work by the pool contractor, the pool, which was built on fill rather than on natural soils, settled, causing water pipes to break; that water effusing from the broken pipes has eroded the soil under the pool and under a part of the foundation of the house next to the pool; and that the bottom of the pool and a part of the foundation of the house have cracked as a result of the erosion.

The plaintiffs filed separate civil actions against the architect and the pool contractor in the United States District Court for the Eastern District of Virginia, based entirely upon theories of negligence. Both defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) on the ground that the complaints had failed to state claims upon which relief could be granted. The defendants took the position that the plaintiffs claimed damages only for economic loss, for which there could be no recovery in tort in the absence of privity. The plaintiffs took the position that their claims were for property damage and, that under Virginia law, the defense of lack of privity had been abolished by Code § 8.01-223. The district court, relying on *Bryant Elec. Co., Inc.* v. *City of Fredericksburg*, 762 F.2d 1192 (4th Cir. 1985)[1], agreed with the defendants and dismissed both complaints. The plaintiffs appealed and this certification followed.

■ In *Blake Construction Co.* v. *Alley*, 233 Va. 31, 353 S.E.2d 724 (1987), we considered the economic loss rule in the context of a construction project. There, the Commonwealth, as owner, entered into one contract with a builder and another contract with an architect, both relating to the construction of an office building. The builder sued the architect for professional negligence resulting in economic losses to the builder. Although there was no privity between the builder and architect, the builder relied on Code § 8.01-223,[2] which abolishes the lack-of-privity defense in actions

---

[1] The district court's final order, denying reconsideration, was entered October 24, 1986, prior to our decision in *Blake Construction Co.* v. *Alley*, 233 Va. 31, 353 S.E.2d 724 (1987).

[2] Code § 8.01-223 provides:

for the recovery of damages to persons or property resulting from negligence. We held that Code § 8.01-223, being in derogation of the common-law requirement of privity in negligence actions, was to be strictly construed according to its terms. Because its language restricted its effect to cases involving injuries to persons or property, we held that it had no application to claims for purely economic losses. Thus, the builder's lack of privity with the architect was fatal to the builder's claim. *Id.* at 34, 353 S.E.2d at 727.

Here, the plaintiffs contend that *Blake* is inapposite because they are claiming damages for injury to property, not purely economic losses. They argue that they are not seeking to recover for the loss of use and enjoyment of the pool or diminution in its value. Rather, they say, they seek to recover for the cost of repairing the damage done to their home caused by the pool "as well as the cost of placing the pool in a condition where it will cause no further damage to their home." The architect and the pool contractor contend that the plaintiffs seek to recover purely economic losses, nowithstanding the language they employ. The resolution of the dispute depends entirely upon the classification in which the plaintiffs' claim properly belongs.

■ Many courts have been confronted with the problem of determining when a claim for damages crosses the line dividing purely economic losses from injuries to persons or property. Most jurisdictions equate economic losses, for which no action in tort will lie, with disappointed economic expectations. *See, e.g., Redarowicz v. Ohlendorf,* 92 Ill. 2d 171, 441 N.E.2d 324 (1982). This is clearly the prevailing rule where damage is claimed because goods purchased fail to meet some standard of quality. *See Moorman Mfg. Co. v. National Tank Co.,* 91 Ill. 2d 69, 435 N.E.2d 443 (1982).[3]

---

In cases not provided for in § 8.2-318 where recovery of damages for injury to person, including death, or to property resulting from negligence is sought, lack of privity between the parties shall be no defense.

Code § 8.2-318 provides:

Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods . . . .

[3] *Moorman* defined economic loss as: "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits — without any claim of personal injury or damage to other property . . . as well as the diminution in the value of

■ In *East River S.S. Corp.* v. *Transamerica Delaval*, 476 U.S. 858 (1986), a unanimous Supreme Court, applying product-liability concepts in an admiralty case, held that when a product "injures itself" because one of its component parts is defective, a purely economic loss results to the owner for which no action in tort will lie. The Court rejected a rule adopted in some jurisdictions which would permit tort recovery where the defective product fails as a result of a sudden, calamitous event. *Cf. Cloud* v. *Kit Mfg. Co.*, 563 P.2d 248 (Alaska 1977); *East River*, 476 U.S. at 870.

· ■ In *East River*, the Supreme Court observed that if, in product-liability cases, no-privity concepts were "allowed to progress too far, contract law would drown in a sea of tort." 476 U.S. at 866. To similar effect, we observed in *Kamlar Corp.* v. *Haley*, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983), that the limitations which apply to contract damages "have led to the 'more or less inevitable efforts of lawyers to turn every breach of contract into a tort'" (quoting W. Prosser, Handbook of the Law of Torts § 92 at 614 (4th Ed. 1971)). Most jurisdictions have resisted such efforts by following the economic loss rule, limiting tort recovery against parties not in privity with the purchaser of a product to cases in which negligent manufacture or design has resulted in a product which constitutes a danger to the *safety* of persons or property other than the product itself. *See Moorman*, 91 Ill. 2d at 77, 435 N.E.2d at 446.[4]

■ Although sales of real estate are not controlled by product-liability concepts in other respects, the rule limiting recovery for economic losses to the law of contracts does apply to sales of real property alleged to be qualitatively defective. *See, e.g., Nastri* v. *Wood Bros. Homes, Inc.*, 142 Ariz. 439, 445, 690 P.2d 158, 163-64 (1984); *Redarowicz, supra.; Crowder* v. *Vandendeale*, 564 S.W.2d 879, 882 (Mo. 1978), *overruled on other grounds, Sharp Bros.* v. *American Hoist & Derrick Co.*, 703 S.W.2d 901 (Mo.

---

the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." 91 Ill.2d at 82, 435 N.E.2d at 449 (citations omitted).

[4] *Cf. Seely* v. *White Motor Co.*, 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965). Chief Justice Traynor's opinion in *Seely*, and cases which follow it, are inapposite here insofar as they refer to strict liability. Virginia law has not adopted § 402A of the Restatement (Second) of Torts and does not permit tort recovery on a strict-liability theory in products-liability cases.

1986) (quoted with approval in *Blake*, 233 Va. at 34-35, 353 S.E.2d at 726).

■ The law of torts is well equipped to offer redress for losses suffered by reason of a "breach of some duty imposed by law to protect the broad interests of social policy." *Kamlar*, 224 Va. at 706, 299 S.E.2d at 517. Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts. *See id.*

■ The controlling policy consideration underlying tort law is the safety of persons and property — the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.

■ The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. The package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective — one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.

■ Recovery in tort is available only when there is a breach of a duty "to take care for the *safety* of the person or property of another." *Blake*, 233 Va. at 34, 353 S.E.2d at 726 (citations omitted) (emphasis added). The architect and the pool contractor assumed no such duty to the plaintiffs by contract, and the plaintiffs' complaint alleges no facts showing a breach of any such duty imposed by law. Accordingly, the first certified question is answered in the negative.

■ The second certified question asks, in effect, whether the result would differ if the swimming pool were located elsewhere on

the plaintiffs' lot. Under the analysis we adopt, a change of location would make no difference. Accordingly,

*The first certified question is answered in the negative.*

*The second certified question is answered in the negative.*