JPS ELASTOMERICS
CORP., Plaintiff,

v.

INDUSTRIAL TOOLS
INCORPORATED,
Defendant.

No. CIV.A. 97–CV–0030–30.

United States District Court,
W.D. Virginia,
Danville Division.

Aug. 14, 1998.

James A.L. Daniel, Daniel, Vaughan, Medley & Smitherman, P.C., Danville, VA, Neal M. Eiseman, Glen Rock, NJ, for Plaintiff.

Glenn W. Pulley, Edward F. Hodges, Clement & Wheatley, Danville, VA, for Defendant.

*OPINION*

MOON, District Judge.

## DECISION AND ENTRY ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; MOTION SUSTAINED IN PART AND OVERRULED IN PART

Plaintiff JPS Elastomerics Corp. (JPS) filed this diversity action against Defendant Industrial Tools Incorporated (ITI). The case arises out of ITI's delivery of two slitter knife units and installation of one of the units, pursuant to a contract that was formed between the two parties in March 1994. JPS alleges, inter alia, that the units were defective and failed to meet the requirements of the contract and the "performance guarantee" which JPS contends it specifically bargained for with ITI. JPS further alleges that the pre-printed "Terms and Conditions" (including a "Warranty" provision that excludes recovery for consequential damages), which are located on the back of several "Customer Acknowledgment" forms and "Sales Agreements," are not "conspicuous" as required by California law and are unconscionable. ITI asserts that the "performance guarantee" was merely a statement clarifying price terms and does not constitute a deviation from the standard "Terms and Conditions" on the back of the aforementioned forms. In addition, ITI argues that the standard terms are not unconscionable, but are valid under California law.

Plaintiff has alleged four accounts in its complaint: breach of contract, breach of express warranty, breach of implied warranties, and misrepresentation. Defendant has moved for partial summary judgment on three counts, pursuant to Fed. R.Civ.P. 56. Oral arguments were heard by this Court on July 31, 1998.

The Court, for reasons set out below, sustains the pending motion in part and overrules same in part. Defendant's motion for summary judgment is sustained in part with respect to consequential dam-

ages and sustained in total with respect to Count IV. The motion is overruled with respect to other counts. Trial will go forward on Counts I, II, and III with regard to direct damages.

## I. Choice of Law

At the outset, the Court must address the issue of which state's law should apply to this case. It is well settled that a federal court sitting in diversity must apply the choice of law rules of the forum state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In the 1994 contract at issue herein, the parties agreed that the contract would be governed by the laws of the state of California. Such forum selection clauses are generally enforced by federal courts, *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 13, 92 S.Ct. 1907, 1915, 32 L.Ed.2d 513 (1972), as well as in Virginia, *Paul Business Systems v. Canon U.S.A., Inc.,* 240 Va. 337, 397 S.E.2d 804 (1990), and neither party has attacked the validity of that provision. Accordingly, California statutory and decisional law governs the contract claims advanced by JPS (Counts I, II, & III).

The choice of law for resolution of any tort claims will be Virginia law. *McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662 (1979). Virginia adheres to the premise that the place of the wrong is the forum for the substantive tort law. However, there is a dispute regarding the presence of a valid tort claim in this action. Therefore, the Court will further address this issue as it arises.

## II. Defendant's Summary Judgment Motion

Under Fed.R.Civ.P. 56 (Rule 56), Defendant's motion can be sustained when the movant conclusively demonstrates, based on the pleadings, affidavits, and other material on record, that there exists no genuine issue of material fact, all evidence and inferences drawn therefrom having been construed in the light most favorable to the party opposing the motion. Fed. R.Civ.P. 56(c); *Cray Communications, Inc. v. Novatel Computer Systems, Inc.,* 33 F.3d 390 (4th Cir.1994).

ITI has divided its argument into three main areas: (1) The contract bars recovery of consequential damages as alleged in Counts I, II, & III; (2) The contract bars Count III for breach of implied warranty in its entirety; and (3) Count IV is barred because the claim is actually a contract action and not actionable in tort. ITI's argument regarding areas (1) and (2) will be considered together while the third area will be addressed subsequently.

A. The Defendant's motion is sustained in part with respect to consequential damages under Counts I, II, & III and is overruled with respect to breach of implied warranty in Count III.

A number of Customer Acknowledgment forms and Invoices prepared by ITI and sent to JPS contain pre-printed "Terms and Conditions of Sale" which appear in small print on the reverse side of the forms. These "Terms and Conditions" spell out warranties and attempt to limit liabilities. Those provisions (in pertinent part) are as follows:

"WARRANTY: ITI, as manufacturer, warrants that the goods sold under this Sales Agreement will be free from defects in material and workmanship at the time of delivery to the original Purchaser. ITI's obligation under this warranty is limited to repairing or replacing, at its option, any part or parts of any goods... The provisions of this warranty shall not apply to any goods which have been subject to misuse, negligence or accident in installation or operation or which shall have been repaired or altered ... in any manner by any party other than ITI without the expressed written consent or direction of ITI... This warranty is expressly in lieu of any other warranties, expressed or implied, including any implied warranty of merchantability or fitness for a particular

purpose not identified in writing at the time that the goods were ordered, and of any other obligations on the part of ITI. In no event will ITI be liable for any consequential damages. Components wholly manufactured by others bear the warranty of their manufacturer."

In Counts I, II, & III, Plaintiff has alleged that Defendant breached the 1994 contract and the express and implied warranties contained therein. As a result, Plaintiff alleges, it is entitled to consequential damages. ITI argues that consequential damages and damages for breach of implied warranties are not recoverable because they have been validly barred by the warranty provision in the Sales Agreement forms.

1. Unconscionability

■ Under California law, consequential damages may be excluded and liabilities may be limited as long as there is equal bargaining power between the parties and the exclusions or limitations are not substantively unconscionable. See S.M. Wilson & Co. v. Smith International, Inc., 587 F.2d 1363 (9th Cir.1978); Appalachian Insurance Co. v. McDonnell Douglas Corp. 214 Cal.App.3d 1, 262 Cal.Rptr. 716 (1989). Consequential damages "may be limited or excluded unless the limitation or exclusion is unconscionable." Cal.Com.Code § 2-719(3). One factor for consideration is whether the terms and conditions are "conspicuous" to the buyer. See Dorman v. International Harvester Company, 46 Cal.App.3d 11, 120 Cal.Rptr. 516 (1975) (holding that writing must be "sufficiently conspicuous to negate implied warranties"). JPS alleges that the pre-printed terms and conditions were not "conspicuous" because the information was printed on the back side of the paper in smaller print. JPS further contends that the front side of the Sales Agreements did not contain a notice of information printed on the back and that its officers were never told to look at the back of the paper. To support these contentions, JPS refers to a number of courts in other jurisdictions which have invalidated such clauses on the back of papers due to the aforementioned reasons. See Hunt v. Perkins Machinery Co., 352 Mass. 535, 226 N.E.2d 228 (1967); Jerry Alderman Ford Sales, Inc. v. Bailey, 154 Ind.App. 632, 294 N.E.2d 617 (1973).

■ However, contrary to JPS' assertions,[1] California law requires that this Court examine more than simply where the terms are printed. The relative bargaining power as well as the sophistication of the parties are all relevant factors to examine. See A & M Produce Co. v. FMC Corporation, 135 Cal.App.3d 473, 186 Cal. Rptr. 114 (1982); AMF Inc. v. Computer Automation, Inc., 573 F.Supp. 924 (S.D.Ohio 1983). Even examining the evidence in the light most favorable to JPS, it is clear to this Court that both parties involved in this contract are of equal bargaining power. The fact that ITI did not expressly indicate to JPS that additional terms and conditions to the contract were located on the back of the purchase agreements does not invalidate the terms and conditions nor does it make them inconspicuous. JPS itself acknowledged that no court applying California law has invalidated a disclaimer solely on the grounds that it appeared on the reverse side of the document. JPS, a company which operates at least three facilities located in three different states, approached ITI and initiated bargaining procedures to develop the technology at issue. It is obvious to this Court that JPS is a seasoned business entity which should have been aware of the terms and conditions on the back of the Customer Acknowledgments. Unlike another case relied on by JPS[2], there is no

---

**1.** JPS cites Siemens Credit Corporation v. Newlands, 905 F.Supp. 757 (N.D.Cal.1994) for the proposition that "conspicuous" terms are only those in large or contrasting type or those terms which fall within the first three paragraphs of the document.

**2.** Dorman v. International Harvester Co., 46 Cal.App.3d 11, 120 Cal.Rptr. 516 (1975).

indication that the disclaimers were located on a separate document from the contract agreement which would have required a separate signature from JPS. Therefore, this Court holds that the contractual exclusion of the consequential damages and the limited warranty provisions are not unconscionable under California law. However, even assuming that the warranty provisions initially control, disputed facts exist regarding whether the parties bargained in this case to change the effect of these provisions.

2. "Failure of its essential purpose"

California Commercial Code § 2–719(1)(a–b) states that parties to a contract may expressly provide that a certain remedy is exclusive. Such a limitation is not enforceable "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose..." Cal. Com.Code § 2–719(2). Herein, ITI points out that the contract provides an exclusive remedy of "repair or replacement" of parts and goods. ITI argues that this remedy should bar all others since the remedy did not "fail of its essential purpose," and was fully exercised in this case. JPS, in contrast, argues that the remedy did "fail of its essential purpose," or at least that triable issues of fact exist on that point.

■ Both parties discuss the 9th Circuit's decision in *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363 (1978), to support their respective arguments. What is clear to this Court is that the Wilson case promulgates relevant factors to consider in determining whether a remedy has "failed of its essential purpose." These include: whether the warrantor diligently made repairs, whether the repairs cured the defects, and whether the consequential loss in the interim was negligible. *Id.* at 1375 (quoting, Eddy, on the "Essential" Purposes of Limited Remedies: The Metaphysics of U.C.C. Section 2–719(a), 65 Calif. L.Rev. 28, 63 (1977)).

The last factor does not need to be considered, however, if the contract otherwise excludes liability for consequential damages. *Id.* Both parties in this case have discussed at length whether ITI provided substantial assistance to meet the terms of the contract. ITI alleges it completed the terms of the repair agreement by demonstrating that "it could successfully cut rubber into .027 inch wide strands in November 1995," while JPS claims that ITI's "success" after 18 months amounted to "no more than ½ to 1% of the performance level guaranteed by ITI."

■ The Court must construe these assertions in the light most favorable to JPS. Under that construction, the Court cannot state, as a matter of law, that the exclusive remedy did or did not "fail of its essential purpose." Facts concerning the effectiveness of ITI's actions and performance, as well as the parties' respective interpretations of the terms of the contract, are hotly disputed. The finder of fact at trial must determine if circumstances caused the remedy to fail of its essential purpose. This conclusion, however, does not affect the exclusion of consequential damages.

As previously discussed, under Cal. Com.Code § 2–719(3), consequential damages may be limited or excluded so long as the provision is not unconscionable. This Court finds unpersuasive JPS's argument that excluding consequential damages in this case is unconscionable because ITI's alleged lack of performance "deprived JPS of the substantial value of the transaction, thereby causing ITI's limited "repair or replace" warranty to fail of its essential purpose." [3] This argument merely relates back to recovery of damages for breach of warranty, and since this Court has already found that triable issues exist regarding the extent of the warranty claims, it is unnecessary to proceed further with this argument.

---

**3.** See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial

Summary Judgment, p. 11.

In the alternative, JPS argues that the damages it seeks for modification costs of approximately $250,000 do not constitute consequential damages, but may be classified as direct damages. California Commercial Code § 2–715(2) defines consequential damages as "resulting from the seller's breach (including) ... (b) Injury to person or property proximately resulting from any breach of warranty." ITI points to a number of cases which define consequential damages as recovery of lost profits and other costs which have been incurred as a proximate result of the seller's breach of contract and breach of warranty. *See R.B. Matthews, Inc. v. Transamerica Transportation Services, Inc.,* 945 F.2d 269 (9th Cir.1991); *Serian Bros., Inc. v. Agri–Sun Nursery,* 25 Cal.App.4th 306, 30 Cal.Rptr.2d 382 (1994).

■ ITI contends that it never contracted to furnish any of the upgrades purportedly made to JPS' host machine. Thus, it argues that the modification costs are consequential damages. This Court finds that reasonable persons could disagree and that a trier of fact needs to make a determination regarding the intent of the parties regarding the contractual language at issue. While consequential damages are expressly limited (lost profits, lost efficiency, unrealized cost savings and diminution in value of its business), ITI's warranty suggests that JPS's modification costs may be recoverable as direct damages. The warranty states that it "shall not apply to any goods which have been ... repaired or altered... by any party ... without the ... written consent *or direction of ITI...* " (emphasis added). Construing the language most favorably to JPS, a reasonable person could find that modifications made to JPS' machine at ITI's direction constitute direct damages which were bargained for as expressly embodied in ITI's own warranty provisions. Thus, this Court holds that consequential damages are barred by the contract between ITI and JPS, but that the $250,000 expense incurred by JPS does not necessarily constitute consequential damages.

### 3. JPS' performance "guarantee"

■ Finally, JPS argues that it specifically negotiated "performance guarantees" with ITI which would override any limitation on liabilities by ITI. This "guarantee" was memorialized on at least one of the Customer Agreements and is as follows:

"[ITI would receive 25% of the purchase price when the knife boxes] would (I) run for the first 100 hours with a failure rate of no greater than 1% to 2% and (ii) run for the second 100 hours with a failure rate of no greater than 8% to 10%."

ITI contends that this "performance statement" creates no inconsistency between JPS' goals and ITI's repair/replacement warranty. ITI suggest that this "performance statement" simply defines in more precise terms what constitutes a product defect to be remedied under the repair/replacement warranty. California Commercial Code § 2–316(1) mandates that these two provisions at issue be "construed wherever reasonable as consistent with each other; but subject to ... parol or extrinsic evidence..." Once again, taking the evidence in a light most favorable to JPS, a reasonable person could disagree with ITI's contentions and find that the performance "statement" was intended as a "guarantee" by JPS which would supersede any standard warranties. Consequently, this Court overrules ITI's motion with regard to Counts I, II, & III to the extent of direct damages for breach of contract and breach of warranties.

### B. The Defendant's motion is sustained with respect to Count IV.

The issue at hand is whether Plaintiff's tort claim states a cause of action for which relief may be granted. ITI argues that Count IV of JPS' complaint is an attempt to "recharacterize its dissatisfaction with ITI's performance of the parties' agreement as sounding in tort." JPS contends that the misrepresentation claim arises from ITI's independent acts separate from its breach of performance guarantee. This Court agrees with ITI.

Virginia's choice of law adheres to the principle that the place of the wrong dictates that the court apply that state's law. Both parties do not disagree that Virginia law would govern any tort action in this case.[4]

■ To recover for a tort action where there's also a breach of contract claim, the Supreme Court of Virginia has required that the plaintiff provide "proof of an independent, wilful tort, beyond the mere breach of a duty imposed by contract." *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514 (1983). Consequently, where a duty has been created solely by a contractual agreement, a breach of that duty supports only a breach of contract claim. *Vanguard Military Equipment Corp. v. David B. Finestone Co., Inc.*, 979 F.Supp. 401 (E.D.Va.1997).

■ Both parties in this case agree that even if an independent tort is present, economic damages are not available absent privity of contract. *See Copenhaver v. Rogers*, 238 Va. 361, 384 S.E.2d 593 (1989). In support of that premise, ITI also argues that even if JPS can allege a wilful, independent tort, recovery should be barred as a result of Virginia's "economic loss doctrine."[5] *See Sensenbrenner v. Rust, Orling, & Neale, Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55 (1988). Economic loss is one that "flows from the failure of the product to perform as expected." *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1182 (4th Cir.1997).

■ JPS correctly asserts that there is privity of contract between JPS and ITI. In addition, it is clear that JPS is seeking recovery for purely economic loss ($250,-000 for modifications to JPS' host machine). The question that arises is whether JPS' remedy for this loss is defined by

ITI's warranty. *Id.* The Virginia Supreme Court has clearly made a distinction between economic losses and injuries to property:

"The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other." *Id.* (quoting *Sensenbrenner*, 236 Va. at 425, 374 S.E.2d at 58). This results in a preservation of the balance of rights and remedies established by warranty law. *Sensenbrenner*, 236 Va. at 423, 374 S.E.2d at 57.

JPS has alleged that ITI "misrepresented" that once JPS made the requested modifications to the host machine, ITI's knife slitter units would work as required by the contract. While Virginia law does recognize the separate tort of fraud even where a valid contract exists, *City of Richmond v. Madison Management Group*, 918 F.2d 438 (4th Cir.1990), the Court also makes a distinction between "a statement that is false when made and a promise that becomes false only when the promisor later breaks his promise; the former is fraud, the latter is breach of contract." *Vanguard*, 979 F.Supp. at 406 (citing *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 325 S.E.2d 91 (1985)).

ITI's duty to JPS resulted only from privity of contract. There is no common law duty which would impose liability once

---

4. JPS suggests that North Carolina law may apply because one of the units was installed in a North Carolina facility, but JPS doesn't seriously contradict the choice of Virginia law governing tort actions. Any alleged "injury" could be found to have initially occurred in JPS' Virginia facility, thus the Court will continue to use Virginia law for purposes of this discussion.

5. The "economic loss doctrine" holds that "if a defendant breaches a duty owed to the plaintiff only through a contractual agreement, the plaintiff may not recover purely economic losses in a related tort action against the defendant." *Tidewater Beverage Services v. Coca Cola Co.*, 907 F.Supp. 943, 947–48 (E.D.Va.1995).

breached. *See Foreign Mission Board v. Wade,* 242 Va. 234, 409 S.E.2d 144 (1991). Count IV is an attempt by JPS to circumvent the remedies for breach of contract and breach of warranties. Clearly, JPS is alleging damages due to a promise that should be governed by the terms of the contract. There is no indication in the facts that ITI owed a duty to JPS absent the existence of the contract. Therefore, this Court holds that JPS' claim sounding in tort is improper and ITI's motion for summary judgment on Count IV is granted.[6]

### III. Conclusion

Taking the facts in a light most favorable to JPS, this Court finds that the pre-printed terms on the back of the Customer Agreements and other forms were not unconscionable as a matter of law and that the exclusion of consequential damages is valid. However, there is a disagreement regarding the exact terms and conditions of the contract between JPS and ITI. Therefore, ITI's motion regarding consequential damages is sustained in part, and the determination of damages resulting from JPS' modification of its host machine will be an issue for the factfinder at trial. ITI's motion to dismiss Count III for breach of implied warranty is overruled. Finally, this Court finds that Count IV is an attempt to circumvent the remedies of contract law and sustains ITI's motion with regard to that issue.

---

**6.** Due to the nature of the resolution of this issue, this Court need not address whether the economic loss doctrine would apply to a tort action in this case.