PRESENT:  All the Justices

CANDICE L. FILAK, ET AL.

v.  Record No. 031407   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                      April 23, 2004
PAMELA S. GEORGE

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge


This appeal is from a judgment for a defendant in an action alleging breach of contract and constructive fraud based on an insurance agent's alleged failure to procure a fire insurance policy with certain provisions.  We consider whether the circuit court erred in sustaining the defendant's demurrer to the constructive fraud claim and in granting the defendant's motion to strike the plaintiff's evidence on the breach of contract claim.

The following facts are relevant to this appeal.  Christian B. Massey and Candice L. Filak, husband and wife, (collectively, the plaintiffs) owned a 36-acre horse farm in Chesterfield County.  The plaintiffs lived in an apartment located in a barn on the farm.

In 1990, the plaintiffs began building their "dream home" on the property.  The plaintiffs, who both had been employed in the construction industry, purchased all the building materials and equipment required for the construction project and performed their own labor in building the house.

The plaintiffs held a "rural fire" insurance policy on their property issued by Virginia Farm Bureau Mutual Insurance Company (Farm Bureau). That policy provided a $150,000 limit of liability for the loss of a dwelling on the farm.

In September 1996, while the house was still under construction, Filak contacted Farm Bureau, which assigned one of its agents, Pamela S. George, to meet with the plaintiffs. George informed the plaintiffs that they could obtain an "elite" insurance policy that would provide at least $481,000 in "total replacement" costs for their new house and its contents in the event that the house was destroyed by fire. The plaintiffs agreed to purchase the "elite" policy and paid a premium to Farm Bureau to secure the policy.

According to the plaintiffs, George told them that in the event of a "full, total, devastating loss" of the house, they would receive under the "elite" policy the total replacement costs "within a few days or the next day" after sustaining such a loss. However, the "elite" policy issued by Farm Bureau provided that in the event of a complete loss, the plaintiffs were entitled to receive total replacement costs only if they repaired and replaced the house within six months after receiving payment for the "actual cash value of the damage."[1]

_____

[1] This policy provision is in accord with the requirements of Code § 38.2-2119.

In July 1997, before construction was completed, lightning struck the house causing a fire that completely destroyed the structure. The plaintiffs filed a claim with Farm Bureau for the total replacement costs of the house. Farm Bureau paid the plaintiffs about $190,000 for the "actual cash value" of the house and informed them that under the terms of their policy they had "180 days . . . to present a claim for any amount over the actual cash value" that they had been paid. The plaintiffs did not rebuild the house.

The plaintiffs filed a motion for judgment against Farm Bureau seeking recovery of the total replacement costs of their house. George was not named as a defendant in this action. The plaintiffs eventually settled their lawsuit with Farm Bureau for $100,000, which they received in addition to the earlier $190,000 payment representing the "actual cash value" of the destroyed structure.

After reaching this settlement with Farm Bureau, the plaintiffs filed an amended motion for judgment against George alleging, among other things, breach of contract and constructive fraud.[2] The plaintiffs alleged, in relevant part:

> [George] told [p]laintiffs that the insurance coverage would cover the full replacement cost of at least $481,000 for the house and building materials while

---

[2] The plaintiffs also asserted against George claims of actual fraud and "malpractice." The circuit court ultimately dismissed these claims, which are not before us in this appeal.

3

the house was under construction. [George] stated that should [p]laintiffs' house burn to the ground, under the insurance she would procure on their behalf, [Farm Bureau] would promptly write them a check for the full replacement cost.

The plaintiffs also asserted that the settlement with Farm Bureau resulted in a total payment that was "at least $200,000 less than the replacement costs of the house."

The plaintiffs further alleged that they "placed their trust and confidence in [George] to advise them properly" and to procure for them "the appropriate insurance coverage," and that they agreed to purchase insurance from her based on her "representations to them and undertakings on their behalf." The plaintiffs asserted that George "misrepresented the procurement . . . of appropriate and adequate coverage, and the terms of the coverage procured," and that they reasonably relied on those misrepresentations to their detriment. The plaintiffs further alleged that George's "misrepresentations" constituted a "breach of [her] duty" to the plaintiffs.

George filed a demurrer to the amended motion for judgment. The circuit court sustained the demurrer to the constructive fraud claim based on the plaintiffs' "inability to clearly allege the existence of a common law duty." Citing the "economic loss rule," the circuit court further held that a claim for constructive fraud is not actionable when such a claim essentially alleges negligent performance of contractual duties.

4

At a jury trial on the contract claim, Massey testified that George stated that the "elite" policy would provide coverage to Filak and Massey in the event of a "full, total, devastating loss."  According to Massey, George explained that if, for example, the house "burned to the ground and there's nothing left," then "the next day, if everything was totally gone, she would pay us the $481,000."  Massey also stated that George told him that the policy would provide payment "immediately [for] replacement [costs] for my home the moment it was lost."

Massey testified that when he received the written "elite" policy from Farm Bureau, he did not review the policy "that closely" because he relied on George's representations concerning the policy contents.  Massey stated that he did not have any concerns about the policy because George had explained the policy "very thoroughly."  With regard to the plaintiffs' alleged damages, Massey conceded that the damages claimed against George were "exactly the same damages that [the plaintiffs] claimed in the Farm Bureau case."

Filak testified that George stated that she would procure an insurance policy for the plaintiffs that would provide $481,000 in total replacement costs for the house and that "in the event of a total loss, we would be paid immediately.  As a

5

matter of fact, she said within a few days or the next day they would come out and pay us."

At the end of the plaintiffs' case, George moved to strike the evidence on the contract claim on various grounds relating to the sufficiency of the evidence. The circuit court sustained the motion to strike and dismissed the plaintiffs' case with prejudice. The plaintiffs appeal.

The plaintiffs argue that the circuit court erred in sustaining George's demurrer to their constructive fraud claim. The plaintiffs note that they alleged George made material misrepresentations, which caused them to enter into both the alleged oral contract with George and the insurance contract with Farm Bureau, and that the plaintiffs reasonably relied on George's misrepresentations to their detriment. The plaintiffs contend that the "economic loss rule" does not bar their constructive fraud claim because George had a "common law duty" to be truthful to them. We disagree with the plaintiffs' arguments.

A demurrer admits the truth of all facts alleged in a motion for judgment but does not admit the correctness of the pleader's conclusions of law. Blake Constr. Co. v. Upper Occoquan Sewage Auth., 266 Va. 564, 570-71, 587 S.E.2d 711, 714-15 (2003); Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 102, 540 S.E.2d 134, 136-37 (2001). The function of a demurrer is to test the legal sufficiency of the facts alleged. Glazebrook v. Bd. of

6

*Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003); *W.S. Carnes, Inc. v. Bd. of Supervisors*, 252 Va. 377, 384, 478 S.E.2d 295, 300 (1996). Because our review of a circuit court's decision sustaining a demurrer addresses that same legal question, we review the circuit court's judgment de novo. *Glazebrook*, 266 Va. at 554, 587 S.E.2d at 591.

Applying these principles, we conclude that the circuit court properly sustained George's demurrer to the constructive fraud claim under the "economic loss rule." As we explained in *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988), losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts. The rationale for this rule lies in the distinctly different policy considerations distinguishing the law of torts from the law of contracts.

The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations. *Id.* Thus, when a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses. *Willard v. Moneta Bldg. Supply, Inc.*, 262 Va. 473, 480, 551 S.E.2d 596, 599

7

(2001); Ward v. Ernst & Young, 246 Va. 317, 325, 435 S.E.2d 628, 632 (1993); Rotonda Condo. Unit Owners Ass'n v. Rotonda Assocs., 238 Va. 85, 90, 380 S.E.2d 876, 879 (1989); Sensenbrenner, 236 Va. at 425, 374 S.E.2d at 58.

Here, the plaintiffs' claim against George merely sought recovery for losses allegedly suffered as a result of George's failure to fulfill her oral contract to procure a policy that would pay the total replacement costs of the plaintiffs' home within a few days after sustaining a total loss.  The purely economic nature of this alleged loss is illustrated by Massey's testimony in which he conceded that the plaintiffs sought to recover the very same damages in their separate lawsuits against George and Farm Bureau.

Further, contrary to the plaintiffs' assertion, George did not have a common law duty to the plaintiffs arising out of the parties' dealings.  The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society.  See Ward, 246 Va. at 324, 435 S.E.2d at 631; Sensenbrenner, 236 Va. at 425, 374 S.E.2d at 58; Blake Constr. Co. v. Alley, 233 Va. 31, 34-35, 353 S.E.2d 724, 726 (1987); Kamlar Corp. v. Haley, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983).  Therefore, we hold that the plaintiffs did not assert a valid claim of constructive fraud against George because

8

whatever duties George may have assumed arose solely from the parties' alleged oral contract.[3]

The plaintiffs also argue that the circuit court erred in sustaining George's motion to strike their claim for breach of contract. Among other arguments, the plaintiffs address the element of damages and assert that as a result of George's breach of her oral agreement, their Farm Bureau policy effectively was worth only $290,000, the amount they actually recovered from Farm Bureau. The plaintiffs contend that, therefore, they sustained damages measured by the difference between the full replacement costs of their home and the amount they actually were paid by Farm Bureau. We disagree with the plaintiffs' arguments and conclude that they failed as a matter of law to establish any damages resulting from George's alleged breach of contract.

The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. Brown v. Harms, 251 Va. 301, 306, 467 S.E.2d 805, 807 (1996); Fried v. Smith, 244 Va. 355, 358, 421 S.E.2d 437, 439 (1992); Westminster Investing Corp. v. Lamps Unlimited, Inc., 237 Va. 543, 546, 379 S.E.2d 316, 317 (1989). In considering the circuit

---

[3] Our conclusion in this regard is applicable both to the plaintiffs' original motion for judgment and to their amended

9

court's decision striking the evidence on the contract claim, we view the facts in the light most favorable to the plaintiffs and draw all fair inferences from those facts. See Howerton v. Mary Immaculate Hosp., Inc., 264 Va. 272, 273, 563 S.E.2d 671, 671 (2002); Baysden v. Roche, 264 Va. 23, 25-26, 563 S.E.2d 725, 726 (2002); Gina Chin & Assocs. v. First Union Bank, 260 Va. 533, 536, 537 S.E.2d 573, 574 (2000).

The evidence showed that George procured for the plaintiffs a policy providing full replacement costs of their home in the event that it was totally destroyed by fire. However, contrary to their alleged agreement with George, the policy required the plaintiffs to rebuild their home within six months of receiving payment for the actual cash value of the damage before they were entitled to receive full replacement costs. Therefore, the proper measure of damages in this case is the difference between the policy that the plaintiffs allegedly bargained for, one that would pay full replacement costs within a few days of a total loss, and the policy that the plaintiffs actually received, one that required them to rebuild their house within the time period specified in the policy before being entitled to payment of full replacement costs. See Estate of Taylor v. Flair Prop. Assocs., 248 Va. 410, 414, 448 S.E.2d 413, 416 (1994); Bryant v. Peckinpaugh, 241 Va. 172, 178, 400 S.E.2d 201, 205 (1991).

---

motion for judgment.

The plaintiffs, however, failed to establish any damages resulting from their inability to obtain full replacement costs within a few days after the fire.  Although the plaintiffs testified that they were unable to rebuild their home without receiving the full replacement costs within the shorter time period promised by George, the plaintiffs did not present any evidence to support this claim.  Notably, the plaintiffs failed to show that they attempted, but were unable, to obtain alternative financing to rebuild the home within the six months required by the policy terms.  They also failed to prove the additional cost of any alternative financing for which they could have qualified, or other "delay" damages attributable to the policy provision requiring them to rebuild their house before receiving full replacement costs.

Based on this record, the only testimony relating to damages was the plaintiffs' unsupported assertion that they could not rebuild the house without receiving immediate payment of full replacement costs from Farm Bureau.  This mere assertion failed as a matter of law to establish damages resulting from the difference in the policy George allegedly agreed to procure for the plaintiffs and the policy that she actually obtained for them. Therefore, we hold that the circuit court properly struck the

11

evidence on the contract claim at the conclusion of the plaintiffs' case.[4]

For these reasons, we will affirm the circuit court's judgment.

Affirmed.

---

[4] Given this resolution of the plaintiffs' contract claim, we need not address George's additional arguments that the alleged oral contract failed for lack of consideration and was barred under the doctrine of accord and satisfaction.  We also express no opinion on whether an action for breach of an alleged contract, such as the one asserted here, will lie against an employee insurance agent based solely on that employee's actions assisting a policyholder in the procurement of an insurance policy issued by her employer.