{¶ 29} I respectfully dissent.
 {¶ 30} In this consolidated appeal, defendants-appellants, State of Ohio, Department of Administrative Services ("DAS") and CPS Holdings, Inc., CPS Holding Company, Ltd., and IQ Solutions, L.L.C. ("CPS"), appeal the trial court's decision granting summary judgment in favor of plaintiffs-appellees, Cincinnati Insurance Company ("Cincinnati") and Gulf Underwriters Insurance Company ("Gulf"). Finding no merit to the appeal, I would affirm.
 {¶ 31} Cincinnati filed a declaratory action against CPS, which counterclaimed and brought claims against DAS and Gulf. Cincinnati sought a judgment declaring that it did not owe CPS a duty to indemnify or defend.
 {¶ 32} The substance of the matter is that CPS had professional insurance policies with Cincinnati and Gulf. DAS contracted with CPS to provide services to its natural gas suppliers, including making payments to those suppliers. CPS failed to make the requisite payments and converted DAS' funds for corporate use. DAS sued CPS and its insurance companies. Cincinnati and Gulf both denied coverage because the liability stemmed from an intentional breach of contract, which was excluded from both policies.
 {¶ 33} The trial court granted summary judgment in favor of Cincinnati and Gulf on the declaratory action, finding that no duty to defend or indemnify CPS existed.
 {¶ 34} DAS and CPS appeal this decision. DAS raises three assignments of error and CPS raises two assignments of error, which will be addressed together where appropriate.
 Standard of Review {¶ 35} Appellate review of summary judgment is de novo.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court set forth the appropriate test in Zivich v.Mentor Soccer Club, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389,696 N.E.2d 201, as follows:
"Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679,1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt,75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264."
 {¶ 36} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.
 Gulf Underwriters Insurance {¶ 37} In the first assignments of error raised by DAS and CPS, they argue that the trial court erred in finding that Gulf did not have a duty to defend or indemnify CPS against the DAS lawsuit.
 {¶ 38} "The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured. (Socony-Vacuum Oil Co. v.Continental Cas. Co., 144 Ohio St. 382, approved and followed.)"Motorists Mutual Ins. Co. v. Trainor (1973), 33 Ohio St.2d 41,294 N.E.2d 874, paragraph two of the syllabus.
 {¶ 39} In the instant case, DAS is suing CPS for breach of contract, breach of express and implied warranty, conversion, unjust enrichment, negligence, professional negligence, liability under R.C. 117.28, and piercing the corporate veil. It is undisputed that Gulf's policy does not cover actions for breach of contract or warranty; thus, DAS and CPS maintain this assigned error under the negligence and professional negligence claims.
 {¶ 40} Pursuant to the terms of the policy, Gulf provides an absolute duty to defend "a covered claim, even if the allegations are groundless, false or fraudulent." A covered claim under this policy is defined as a "wrongful act" which includes "a negligent act, error or omission." The policy expressly excludes intentional acts, claims arising out of ill-gotten gains or profits, and liability assumed under a contract.
 {¶ 41} Following the syllabus in Trainor, supra, we must look at the allegations contained in the complaint to determine whether a duty to defend exists. The complaint, while alleging negligence and professional negligence, essentially stems from CPS' breach of contract with DAS and the improper recovery of profits for CPS' use. The actual substance of the complaint, not how it is categorized, determines the nature of the claims.Ippolito v. First Energy Corp, Cuyahoga App. No. 84267,2004-Ohio-5876. "The term `claim,' as used in the context of Civ. R. 54(B), refers to a set of facts which give rise to legal rights, not to the various legal theories of recovery which may be based upon those facts. CMAX, Inc. v. Drewry PhotocolorCorp. (9th Cir. 1961), 295 F.2d 695, 697. Unless a separate and distinct recovery is possible on each claim asserted, multiple claims do not exist. Local P-171 v. Thompson Farms Co. (7th Cir. 1981), 642 F.2d 1065, 1070-71." Aldrete v. Foxboro Company
(1988), 49 Ohio App.3d 81, 550 N.E.2d 208.
 {¶ 42} Although DAS has alleged claims for negligence and professional negligence, the claims stem from the facts and circumstances of CPS' breach of contract. Moreover, in order to maintain a negligence action, DAS must prove that CPS owed them a duty. The only duty that arises under this cause of action is a contractual one, which takes the negligence action outside of Gulf's policy coverage. In fact, the complaint alleges under the "negligence" and "professional negligence" claims that CPS "owed Plaintiff a duty to provide reasonable care to act in a competent manner in the course of providing cash management and billing services to Plaintiff." This duty arises under the contract between CPS and DAS because the contract was to provide cash management and billing services. Under "Schedule of Insured Services," Gulf's policy states: "Providing energy management consulting and energy management services to others, including accounting, auditing and administrative services."
 {¶ 43} Therefore, because the gravamen of the complaint involves a breach of contract and conversion, Gulf's policies do not cover this action and Gulf has no duty to defend CPS.
 {¶ 44} Additionally, the Ohio Supreme Court recently addressed the issue of filing a negligence action for recovery of economic losses when a contract exists, stating:
"The economic-loss rule generally prevents recovery in tort of damages for purely economic loss. See Chemtrol Adhesives, Inc.v. Am. Mfrs. Mut. Ins. Co. (1989), 42 Ohio St.3d 40, 45,537 N.E.2d 624; Floor Craft Floor Covering, Inc. v. Parma CommunityGeneral Hosp. Ass'n (1990), 54 Ohio St.3d 1, 3, 560 N.E.2d 206. `"The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."' Chemtrol, 42 Ohio St.3d at 44, 537 N.E.2d 624, quoting Nebraska Innkeepers, Inc. v. Pittsburgh-Des MoinesCorp. (Iowa 1984), 345 N.W.2d 124, 126. See, also, FloorCraft, 54 Ohio St.3d at 3, 560 N.E.2d 206. This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that `parties to a commercial transaction should remain free to govern their own affairs.' Chemtrol, 42 Ohio St.3d at 42,537 N.E.2d 624. See, also, Floor Craft, 54 Ohio St.3d at 7,560 N.E.2d 206, quoting Sensenbrenner v. Rust, Orling Neale Architects,Inc. (1988), 236 Va. 419, 425, 374 S.E.2d 55, 5 Va. Law Rep. 1040. `"Tort law is not designed * * * to compensate parties forlosses suffered as a result of a breach of duties assumed only byagreement. That type of compensation necessitates an analysis ofthe damages which were within the contemplation of the partieswhen framing their agreement. It remains the particular provinceof the law of contracts."' Floor Craft, 54 Ohio St.3d at 7,560 N.E.2d 206, quoting Sensenbrenner, 236 Va. at 425,374 S.E.2d 55." Corporex Development Construction Mgmt. v. Shook,Inc., 106 Ohio St.3d 412, 414, 2005-Ohio-5409, 835 N.E.2d 701
(Emphasis added).
 {¶ 45} Therefore, under this theory, DAS is precluded from filing a negligence action against CPS for breach of contract.
 {¶ 46} In the alternative, DAS has asked this court to adopt the reasonable-expectation doctrine concerning an insured's expectation of insurance coverage. The Ohio Supreme Court recently addressed this doctrine and declined to adopt it inWallace v. Balint, 94 Ohio St.3d 182, 189, 2002-Ohio-480,761 N.E.2d 598, stating:
"This doctrine is explained in 2 Restatement of Law 2d, Contracts (1981), Section 211(3), which provides:
`Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.'
Professor Keeton has described the reasonable-expectation doctrine: `The objectively reasonable expectations of applicants and beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.' Keeton, Insurance Law Rights at Variance with Policy Provisions (1970), 83 Harv.L.Rev. 961.
 {¶ 47} Because we have found that Gulf's policy specifically excludes coverage for liabilities arising out of contract, and CPS and DAS concede this fact, there is no basis to adopt the reasonable-expectation doctrine. Gulf does not have a duty to defend because of some obscure term that was or was not included. Rather, Gulf does not have a duty to defend because CPS breached its written contract with DAS. Lack of coverage results from CPS' actions, not the parties lack of intent or expectation. Therefore, we should find that the reasonable-expectation doctrine is inapplicable in this instance. Moreover, we should nevertheless decline to adopt this doctrine because the Ohio Supreme Court has recently decided not to adopt it. See,Wallace, supra.
 {¶ 48} Accordingly, I would overrule the first assignments of error.
 Cincinnati Insurance {¶ 49} In the second assignments of error raised by DAS and CPS, they argue that the trial court erred in finding that Cincinnati did not potentially have a duty to defend or indemnify CPS against DAS' lawsuit.
 {¶ 50} Cincinnati issued a general commercial liability policy and an umbrella policy to CPS. DAS and CPS both have abandoned any claim regarding the general liability policy. Instead, they claim that the umbrella policy covers this lawsuit and therefore triggers Cincinnati's duty to defend or indemnify.
 {¶ 51} Construction of an insurance policy is a matter of law. Chicago Title Ins. Co. v. Huntington National Bank (1999),87 Ohio St.3d 270, 273, citing Latina v. Woodpath DevelopmentsCo. (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262. In interpreting policies, the plain and ordinary meaning of the language used in the policy is reviewed, unless another meaning is clearly apparent. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus.
 {¶ 52} DAS and CPS both contend that the umbrella policy affords broad blanket coverage, covering any available insurance to the insured, including the general liability policy and Gulf's policy. DAS and CPS both claim that Cincinnati's umbrella policy provides excess coverage to the Gulf policy, extending the limits and scope of the policy. They base this contention on what the umbrella policy specifically excludes and fails to exclude from coverage. "Although the CIC umbrella policy specifically excludes certain designated professional services provided by CPS/IQ (i.e., computer programming and consulting; computer manufacturing and software; electronic data processing services), the policy does not specifically exclude the professional services provided by IQ to the State * * *." This argument is flawed for two reasons.
 {¶ 53} First, the umbrella policy covers damages only for bodily injury, property damage, personal injury or advertising injury which are not covered by underlying insurance or other insurance. In the instant case, DAS is seeking only monetary damages, which are not property damages.
 {¶ 54} Therefore, because DAS is seeking monetary damages, the umbrella policy does not cover the claims; thus, Cincinnati does not owe CPS a duty to defend.
 {¶ 55} Second, merely because the policy does not specifically exclude the services listed under the Gulf policy does not mean that the policy includes these services. Giving credence to DAS' and CPS' arguments would open the door to ANY service not specifically listed. This could include legal services, landscaping services, transportation services, or psychological services. DAS' and CPS' reasoning is completely without merit. Moreover, they fail to support their argument with any case law that holds that anything specifically excluded is inherently included.
 {¶ 56} Therefore, I would find that Cincinnati, under its umbrella policy, does not owe CPS a duty to defend.
 {¶ 57} Accordingly, the second assignments of error are overruled.
 DAS' Final Assignment of Error {¶ 58} In DAS' final assignment of error, it argues that the trial court erred in construing its lawsuit against CPS as sounding in intentional and criminal liability only, and disregarding DAS' claims for negligence and professional negligence.
 {¶ 59} As explained above, DAS' claims for negligence and professional negligence are couched under the theory of breach of contract. Therefore, it was not error for the trial court to disregard those claims.
 {¶ 60} Accordingly, DAS's third assignment of error should be overruled and judgment affirmed.
 APPENDIX A Appellant CPS's Assignments of Error:
I. THE TRIAL COURT ERRED IN FINDING THAT GULF UNDERWRITERS INSURANCE COMPANY DID NOT HAVE A DUTY TO DEFEND CPS/IQ IN THE DAS LAWSUIT SINCE SOME — ALTHOUGH ADMITTEDLY NOT ALL — OF THE ALLEGATIONS IN DAS'S FIRST AMENDED COMPLAINT COULD ARGUABLY OR POTENTIALLY BE COVERED BY GULF'S POLICIES.
II. THE TRIAL COURT ERRED IN FINDING THAT CINCINNATI INSURANCE COMPANY DID NOT POTENTIALLY HAVE A DUTY TO DEFEND CPS/IQ IN THE DAS LAWSUIT SINCE SOME — ALTHOUGH ADMITTEDLY NOT ALL — OF THE ALLEGATIONS IN DAS'S FIRST AMENDED COMPLAINT COULD ARGUABLY OR POTENTIALLY BE COVERED BY CINCINNATI'S UMBRELLA POLICY.
Appellant DAS's Assignments of Error:
I. THE TRIAL COURT ERRED IN HOLDING THAT GULF OWES NO DUTY TO DEFEND OR INDEMNIFY CPS/IQ AGAINST DAS' LAWSUIT.
II. THE TRIAL COURT ERRED IN HOLDING THAT CIC OWES NO DUTY TO DEFEND OR INDEMNIFY CPS/IQ AGAINST DAS' LAWSUIT.
III. THE TRIAL COURT ERRED IN CONSTRUING DAS' LAWSUIT AGAINST CPS/IQ AS SOUNDING IN INTENTIONAL AND CRIMINAL LIABILITY ONLY, AND DISREGARDING THE DAS' CLAIMS FOR NEGLIGENCE AND PROFESSIONAL NEGLIGENCE.