# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

City of Portsmouth

v.

Cederquist Rodriguez Ripley, P.C., et al.

January 29, 2007

Case No. CL06-2958

BY JUDGE DEAN W. SWORD, JR.

This opinion letter is addressed to two specific issues: (1) whether the "Dillon Rule" prohibits the enforcement of an arbitration provision contained in a least one of the contracts at issue and (2) whether this is a contract or tort action.

The court finds for the reasons stated hereafter that the answer to the first question is no and, secondly, this is a contract matter. As noted hereafter, my record is not adequate to enter orders resolving all of the issues and I am directing counsel to attempt this task.

Counsel for the defense suggests that the terms of the contract require the parties to engage in arbitration. Indeed, the plain language of the contract does contain such a provision. The city argues that the "Dillon Rule" makes such a provision unenforceable.

(While there are two agreements that exist, the dates may be significant in a resolution of the issue and it should be noted that the effective dates are March 26, 1999, and April 23, 1999.)

The "Dillon Rule" is generally described as a strict construction control of the powers of local government. The Supreme Court has on any number of occasions said ... "municipal corporations have only those powers that are expressly granted, those necessary or fairly implied from expressly granted powers, and those that are essential and indispensable." *City Council of Alexandria v. Lindsey Trust*, 258 Va. 424, 427 (1999) (internal citation

omitted); *Arlington County v. White*, 259 Va. 708, 712 (2000); *City of Virginia Beach v. Hay*, 258 Va. 217, 221 (1999).

Logically the first place we must look at is the express powers that may have been granted at the time of the subject contracts in 1999. As of 2002, Portsmouth City Code § 12.-254(b)(4) provides:

> Subsection (a) shall not be construed to render void any provision of a public construction contract that. ... 4. Provides for arbitration or any other procedure designed to settle contract disputes.

While § 12-254(a) deals with the issue of delay damages being void, it would seem that at least beginning in 2002 the City has agreed that its contracts may provide for arbitration. How then does this affect our case?

There is nothing in this section to suggest that state law (or the lack thereof) would not allow contracts to provide for the arbitration and this section simply acknowledges that part (a) of the statute shall not be construed as a voiding rule.

At the time, 1999, of the execution of these contracts, public contracting authority was found in Chapter 7 of Title 11 of the Code of Virginia. This Chapter was repealed *in toto* effective October 1, 2001. I am, however, of the opinion that the now repealed sections control in this case.

It seems that Virginia Code § 11-71.1 answers the Dillon Rule argument:

> Public bodies are authorized to enter into agreements to submit disputes arising from contracts entered into pursuant to this chapter to arbitration and to utilize mediation or other alternative dispute resolution procedures. . . .

Clearly state law as it existed in 1999 provides the express power for a locality to enter into a contract providing for arbitration. While a viable argument could be made that the city council could provide by ordinance that arbitration provisions shall not be valid, the court is unaware of any such ordinance and cannot come to the conclusion that § 12-254(b)(4) is such a provision. In fact a reasonable reading of that ordinance would seem to the contrary and it simply acknowledges the validity of such an agreement.

Lastly, the court is unsure of the procedural status of the arbitration issue. Clearly, the "Dillon Rule" argument fails and it would seem that the matter is subject to arbitration. What is less clear is whether all of the issues are subject to arbitration or whether all of the defendants may take advantage of the provision.

Therefore, counsel are invited to confer in an attempt to work this out and, if they are unable to do so, schedule a hearing to resolve these issues.

The second issue is whether or not the city may recover damages based upon a theory of negligence or whether the damages must be based upon a breach of contract. This question raises a second issue as to the application of the "economic loss rule."

This action essentially alleges that the defendants were engaged in their professional capacity to perform architectural and engineering services in the design of a fire station for the city. Simply stated, the claim is the failure of the respective defendants to properly perform these services, which then caused damage to the property of the city.

While "professional liability" cases frequently contain pleadings alleging neglect, carelessness, or failure to perform at the applicable level of professional standards, the underlying question must be where did the duty to the plaintiff originate. If the duty may be found in the common law then some remedy at tort may apply. On the other hand, if the duty arises out of a contract then the law of contract must be the basis for the claim.

An examination of the allegations in this case reveal that the relationships between the parties are all based upon written contracts. No allegations are made that would suggest a duty to the city that can be attributed to the common law.

*Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419 (1988), is factually similar to this case and, in my opinion, controlling. *Sensenbrenner* involved a construction contract between the plaintiff and O'Hara and Company, Inc. (not a defendant) for the construction of a home with an enclosed swimming pool. As a part of the process O'Hara entered into two subcontracts: (1) with KDI Sylvan Pools for the pool installation and (2) with Rust, Orling and Neale for architectural design of the entire project including the pool. The suit filed against Rust and KDI alleged negligent design and construction work. In finding that these claims were in fact breach of contract matters, the Supreme Court observed:

> The controlling policy consideration underlying tort law is the safety of person and property ... from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed ... may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.

*Sensenbrenner* at p. 425.

The case of *Blake Construction Co. v. Alley*, 233 Va. 31 (1987), is also factually similar to our matter and comes to a similar conclusion.

> The architect's duties both to owner and contractor arise from and are governed by the contracts related to the construction project. While such a duty may be imposed by contract, no common law duty requires an architect to protect the contractor from purely economic loss.

*Blake* at p. 34.

The court, therefore, finds that the various allegations contained in the complaint are firmly grounded in contract and not in tort.

Again, my record does not allow me to apply the ruling to all of the outstanding issues, and, therefore, I request counsel to confer and attempt to work out these matters. If this is not possible, we should schedule a hearing to make an appropriate order.