PRECISIONIR INC., Plaintiff,

v.

Brent A. CLEPPER, et al., Defendants.

No. 08 Civ. 6389(VM).

United States District Court,
S.D. New York.

March 1, 2010.

Adam Benjamin Michaels, Suzanne D. Brodock, Pepper Hamilton, LLP, New York, NY, M. Kelly Tillery, Pepper Hamilton, L.L.P., Philadelphia, PA, for Plaintiff.

Matthew J. Norris, Norris Law Group P.C., King of Prussia, PA, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff PrecisionIR Inc. ("PrecisionIR") brought this action against defendants Brent A. Clepper ("Clepper") and TalkPoint Holdings, L.L.C. d/b/a/ TalkPoint Communications ("TalkPoint") (collectively, "Defendants"). PrecisionIR's amended complaint, dated November 17, 2009 (the "Amended Complaint" or "Am. Compl."), asserts three counts relating to Clepper's departure as a PrecisionIR employee and work as an employee of TalkPoint: (1) breach of contract against Clepper; (2) intentional interference with business relations, employer-employee relations, and contracts against TalkPoint; and (3) conspiracy under Virginia Code § 18.2–499, Va.Code Ann. § 18.2–499 (" § 18.2–499" or "Statutory Conspiracy"). Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), alleging that PrecisionIR's breach of contract claim fails as a matter of law because it is based on an unenforceable agreement and that PrecisionIR fails to present facts to support any of its three causes of action sufficient to preclude summary judgment. For the reasons discussed below, Defendants' motion is DENIED.

## I. BACKGROUND [1]

PrecisionIR is a company that provides webcasting and related services to organi-

---

1. The factual summary that follows derives primarily from the following documents, and any exhibits or declarations submitted therewith: Am. Compl.; Defendants' Rule 56.1 Statement of Material Facts, dated December 23, 2009; and Response of Plaintiff PrecisionIR Inc. to the Rule 56.1 Statement of Material Facts of Defendants, dated January 22, 2010. Except where specifically referenced, no further citation to these sources will be made.

zations around the United States and Canada. According to PrecisionIR, it competes directly with TalkPoint for webcasting clients.

On August 20, 2004, Clepper accepted employment with PrecisionIR and signed a confidentiality and non-competition agreement (the "Employment Agreement"). The Employment Agreement contains several provisions relating to the issues here in dispute, including: non-competition with PrecisionIR (the "Non–Competition Provision"), non-solicitation of PrecisionIR clients with whom Clepper had contact at PrecisionIR (the "Non–Solicitation Provision"), non-raiding of employees (the "Non–Raiding Provision"), notice of employment offers (the "Offer–Notice Provision"), and confidential information (the "Confidential–Information Provision"). These provisions read:

> Non–Competition. During my employment with the Company and for a period of six (6) months following the date of voluntary or involuntary termination of my employment, regardless of reason, I will not compete with the Company in the United States or Canada. I understand that the preceding sentence does not prevent me from working in a capacity that does not involve the same or similar duties, responsibilities or assignments as those I performed while employed by the Company.

> Non–Solicitation.... During my employment with the Company and for a period of six (6) months following the date of voluntary or involuntary termination of my employment, regardless of reason, I will not provide or solicit to provide any person or entity that was a client of the Company in the United States or Canada with whom I had contact as a result of my employment with the Company.

> Non–Raiding. During my employment with the Company and for a period of

six (6) months following the date of voluntary or involuntary termination of my employment, regardless of reason, I will not hire or solicit to hire any employee of the Company for employment other than with the Company in the United States or Canada.

> Notice of Conflicts.... I agree to notify my direct supervisor at the Company in writing within three (3) business days after receiving an offer of employment from any employer that competes with the Company. I understand that the giving of such notice does not relieve or alter any of my other obligations under this Agreement.

> Confidential Information.... I will not disclose any Confidential Information to others outside the Company or use any Confidential Information for any other purposes, either during or after my employment, unless and until such Confidential Information has become public knowledge without fault by me. All written or other tangible material containing Confidential Information shall be delivered to the Company upon the earlier of a request by the Company or the termination of my employment.

(Employment Agreement ¶¶ 3, 5–7, 10.) The Employment Agreement also contains an acknowledgment regarding the reasonableness of these restrictions:

> Reasonableness of Restrictions. I acknowledge that the terms of this Agreement are reasonable in light of the Company's interest in protecting its business, clients and employees, and that the restrictions in this Agreement will not prevent me from earning a living whether in the investor relations or financial services industries or otherwise. I acknowledge that the geographic scope of the above restrictions on employment is reasonable because the Company has clients and does business

over the Internet and through other media *throughout the United States and Canada.*

(*Id.* ¶ 8 (emphasis added).)

When Clepper began this employment at PrecisionIR in August of 2004, he worked under the title of Director of Business Development for Investment Companies. In October 2005, PrecisionIR promoted Clepper to a sales position with even more responsibility relating to its webcasting business. Clepper's new position required him to "[d]evelop client sales plan[s] to profitably acquire new and retain existing channel sales clients for [PrecisionIR's] webcasting services (www.vcall.com) *within North America.*" (Transmittal Declaration of Adam B. Michaels, dated January 22, 2010 ("Michaels Decl."), Ex. M (emphasis added).)

In July of 2006, Clepper started a job search. On January 26, 2007, Steve Rubin ("Rubin"), Vice President of Channel Sales at TalkPoint, sent an email to Clepper that mentions Clepper's decision to join Talk-Point. On January 29, 2007, Rubin sent Clepper a formal offer letter and confidentiality agreement. On the same day, Clepper resigned from PrecisionIR via telephone. According to PrecisionIR, Clepper did not notify it of TalkPoint's offer of employment. On February 13, 2007, Clepper submitted his formal resignation via email with two weeks' notice, writing that he was going to work for his uncle's construction business in New York. A week later, on February 20, 2007, Clepper started as the Director of Global Alliance for TalkPoint.

When Clepper was in the process of leaving PrecisionIR and joining TalkPoint, Rubin asked Clepper if he had an employment agreement that limited his ability to join TalkPoint. According to TalkPoint, Clepper told Rubin that he did not, even though he had signed the Employment Agreement about two and a half years earlier.

At TalkPoint, Clepper's responsibility included managing existing clients and prospects for new clients for TalkPoint's webcasting services. Clepper does not have a region in which he works, though his clients are primarily in the United States. According to PrecisionIR, Clepper marketed webcasting services to existing and prospective clients throughout the United States and Canada.

Before the expiration of the six-month period contained in the Non–Competition Provision, Non–Solicitation Provision, and Non–Raiding Provision, Clepper engaged in several actions at issue in this case. For example, he began working with TalkPoint in a sales role involving its webcasting business, contacted several of his former clients from PrecisionIR, and had repeated contact with Michael Slawter ("Slawter"), a top-performing salesman working for one of PrecisionIR's affiliates. With regard to the Slawter contact, Clepper was aware of Slawter's impressive sales record at PrecisionIR. Clepper's communications with Slawter included informing Slawter of a Talk-Point job opening and extolling the virtues of TalkPoint's management and business. TalkPoint subsequently hired Slawter.

Slawter had also signed an employment agreement with PrecisionIR (the "Slawter Employment Agreement") that restricted him in ways similar to those in the Employment Agreement that restricted. Clepper, Before Slawter ended his association with PrecisionIR and joined Talk-Point, he communicated to TalkPoint his concern about the restrictions in the Slawter Employment Agreement. Nevertheless, TalkPoint proceeded to hire Slawter. When Slawter left the PrecisionIR affili-

ate, he too told PrecisionIR that he was leaving to work for his family's business.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of demonstrating that no genuine issue of material fact exists or that, because of the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994).

### B. *BREACH OF CONTRACT*

■ PrecisionIR asserts a breach of contract claim against Clepper for his alleged violation of five discrete provisions in the Employment Agreement: (1) the Non–Competition Provision; (2) the Non–Solicitation Provision; (3) the Non–Raiding Provision; (4) the Offer–Notice Provision; and

(5) the Confidential–Information Provision. Defendants assert two main arguments to support their motion. First, they argue that as a matter of law the entire Employment Agreement is void because of: (1) the alleged geographical overbreadth found in both the Non–Competition Provision and the Non–Solicitation Provision and (2) the purported ambiguity and lack of definition of terms found in these two provisions. Second, Defendants argue that even if the Employment Agreement is enforceable, no facts—even when construed most favorably to PrecisionIR—evidence that Clepper breached either the Non–Competition Provision or the Non–Solicitation Provision.[2] As discussed below, the Court finds Defendants' arguments insufficient and therefore concludes that disputed issues of material fact exist regarding PrecisionIR's breach of contract claim that preclude granting summary judgment at this stage.

#### 1. *The Enforceability of the Non–Competition and Non–Solicitation Provisions*

#### a. *The Alleged Overbreadth*

■ Under Virginia law,[3] "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004). Defendants' geographic-over-

---

**2.** Defendants make the new argument in their reply brief that no facts in the record support a finding that Clepper breached the (1) Non–Raiding Provision, (2) Offer–Notice Provision, and (3) Confidential–Information Provision. The Court will not consider Defendants' expanded, procedurally-improper arguments. *See U.S. v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief.");

*Playboy Enterprises, Inc. v. Dumas*, 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) ("Arguments made for the first time in a reply brief need not be considered by a court") (S.D.N.Y. 1997). The Court further notes that it nevertheless finds the new arguments unpersuasive based on a review of the facts in the record.

**3.** The parties agree that Virginia law applies to the three causes of action in this dispute.

breadth arguments against the Non–Competition Provision and the Non–Solicitation Provision address the first prong above.

■■■ Whether a restrictive covenant in the employment context is enforceable is a question of law to be determined by the Court and the standards applicable to that determination "are well established." *Omniplex World Servs. Corp. v. United States Investigations Servs., Inc.*, 270 Va. 246, 618 S.E.2d 340, 342 (2005). "A non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." *Id.* at 342. "Any non-competition agreement that is overbroad is unenforceable as a matter of law." *Market\*Access Int'l, Inc. v. KMD Media, LLC*, No. CL–2005–4314, 2006 WL 3775935, at \*2 (Va.Cir.Ct. Dec. 14, 2006) (*citing Motion Control Sys., Inc. v. East*, 262 Va. 33, 546 S.E.2d 424, 425 (2001)). "Because such restrictive covenants are disfavored restraints on trade, the employer bears the burden of proof and any ambiguities in the contract will be construed in favor of the employee." *Omniplex*, 618 S.E.2d at 342. This burden requires the party seeking enforcement of the restrictive covenant to show that it has a reasonable geographic scope and other limits. *See Market\*Access*, 2006 WL 3775935, at \*2. "These standards have been developed over the years to strike a balance between an employee's right to secure gainful employment and the employer's legitimate interest in protection from competition by a former employee based on the employee's ability to use information or other elements associated with the employee's former employment." *Omniplex*, 618 S.E.2d at 342.

Defendants assert that the geographic scopes of the Non–Competition Provision and the Non-solicit Provision are unenforceable because they are not sufficiently narrow, are burdensome to Clepper's ability to earn a living, and are generally against public policy. Defendants' argument focuses on the relatively-broad geographic restriction of "the United States and Canada" found in each provision.

While the geographic scope of non-competition agreements must be reasonable, Virginia courts commonly uphold restrictive covenants as such even when they encompass large geographic areas. *See, e.g., Roanoke Engineering Sales Co. v. Rosenbaum*, 223 Va. 548, 290 S.E.2d 882, 885 (1982) (upholding a three-year, multistate non-competition agreement as sufficiently narrow because the former employee had knowledge of the employer's business interests in all its branches and "the restriction is no greater than necessary to protect [the employer's] legitimate business interest [given that it is] appropriately limited in time and is coterminous in area with the territory in which [it] did business."); *Foti v. Cook*, 220 Va. 800, 263 S.E.2d 430, 431, 433–34 (1980); *Market\*Access*, 2006 WL 3775935, at \*4–\*5. Further, an employer's business focus on a geographically-wide area via the Internet militates in favor of judicial deference to geographically-broader restrictive covenants. *See Market\*Access*, 2006 WL 3775935, at \*3–5 (enforcing agreement with no geographic limitation and noting the effect of the Internet and nationalization of sales).

■■■ That PrecisionIR's business, which focuses on providing organizations with webcasting and related services, is largely Internet-based and covers the entire United States and Canada weighs in favor of upholding the reasonableness of the geographical scope here, especially when the evidence is viewed in the light most favorable to PrecisionIR at this stage of the litigation. Additionally, in the Employ-

ment Agreement itself, Clepper and PrecisionIR acknowledge that the "geographic scope of the restrictions on employment [at issue here] is reasonable because [PrecisionIR] has clients and does business over the Internet and through other media throughout the United States and Canada." (Employment Agreement ¶ 8.) Clepper's job description also reflects the wide geographic scope found in (and acknowledged by Clepper) in the Employment Agreement. (*See* Michaels Decl., Ex. M (stating Clepper's job description at PrecisionIR as requiring him to "[d]evelop client sales plan[s] to profitably acquire new and retain existing channel sales clients for [PrecisionIR's] webcasting services (www.vcall.com) within North America").)

Further, a review of Virginia case law establishes that the geographic scope of a restrictive covenant is neither solely determinative of its enforceability nor a prong of the analysis that must be satisfied in order to sustain such a covenant. *See Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666, 678 (2001) ("In determining the reasonableness and enforceability of restrictive covenants, trial courts must not consider function, geographical scope, and duration as three separate and distinct issues. Rather, these limitations must be considered together."); *Market\*Access*, 2006 WL 3775935, at \*4 ("While in each of the [three Virginia Supreme Court] cases [examined] the lack of geographic limitations was a part of the analysis, it was by no means solely determinative of the issue of whether the agreements were enforceable as a matter of law."); *id.* at \*4 ("The mere fact that there is no *geographic limitation* is not fatal to the enforceability of the non-compete agreement . . . ." (emphasis added)). Thus, the reasonableness of the geographic scopes of the covenants in the Employment Agreement at issue must also be viewed in the context of the other terms found in those provisions.

The Court finds that the temporal restrictions found in the provisions—each limited to a period "[d]uring [the employee's] employment with the Company and for a period of six (6) months following the date of voluntary or involuntary termination of [that] employment"—end well short of the point at which Virginia law would consider them unreasonable. (Employment Agreement ¶ 5, 7.) After only six months from his termination, the Employment Agreement allows Clepper to work in a role similar to his job duties at PrecisionIR and to even solicit his former PrecisionIR clients. According to PrecisionIR, this relatively-narrow time restriction functions to provide PrecisionIR with a reasonable period in which to transfer the departing employee's accounts to new sales associates and to continue its relationship with existing customers. It also serves to counterbalance the effect of what is a relatively-large, although reasonable, geographic scope. *See, e.g., Advanced Marine Enters., Inc. v. PRC Inc.*, 256 Va. 106, 501 S.E.2d 148, 155 (1998) ("In the context of the brief time period involved and the narrow definition of prohibited services, the geographic restriction does not pose an unreasonable restraint on departing employees.").

The Non–Competition Provision's job-role scope also provides a counterweight to its relatively large geographic scope. The provision applies only to employment with similar duties, responsibilities, or assignments and "does not prevent [Clepper] from working in a capacity that does not involve the same or similar duties, responsibilities or assignments as those [he] performed while employed by [PrecisionIR]." (Employment Agreement ¶ 7.) Thus, the restriction does not bar Clepper from working anywhere in the United States and Canada for even a PrecisionIR competitor; it merely bars Clepper from working in roles similar to those he performed

at PrecisionIR. *Cf. Roto–Die Co. v. Lesser,* 899 F.Supp. 1515, 1520 (W.D.Va.1995) (finding covenant not to compete unenforceable because the "provision would prevent [the former employee] from working in any capacity, including that of a janitor, for a 'Competitive Business' ").

■ The Non–Solicitation Provision also contains limits that further convince the Court of its reasonableness and provide a ballast to the effect of the relatively-broad geographic scope of the restrictive covenant. The provision applies only to "client[s] of [PrecisionIR] in the United States or Canada with whom [Clepper] had contact as a result of [his] employment with [PrecisionIR]." (Employment Agreement ¶ 5). Thus, the covenant is narrowed to (1) PrecisionIR clients (2) with whom Clepper had contact as a result of his employment with PrecisionIR. *See Foti,* 263 S.E.2d at 431 (finding an agreement with *no geographic restriction* enforceable and "not unreasonable as to time, area, or persons" where it was limited to the plaintiff employer's clients). With this limit, the geographic breadth of the Non–Solicitation Provision is inherently coterminous with PrecisionIR's business and Clepper's role in that business. The Court therefore need not even examine, as it did with regard to the Non–Competition Provision, whether or not the geographic restriction in the Non–Solicitation Provision is relevant to PrecisionIR's business.

Defendants nonetheless assert that a non-competition or non-solicitation restrictive covenant that geographically includes the United States and Canada must be struck down as legally unenforceable. They support this assertion with the dissenting opinion of a Fourth Circuit Judge in *Comprehensive Technologies Int'l v. Software Artisans,* 3 F.3d 730, 741 (4th Cir.1993). Defendants cite only to the dissenting aspect of Judge Murgaghan's concurring and dissenting opinion. In that

case, the Fourth Circuit upheld the restrictive covenant at issue. Reversing a determination that the covenant was legally unenforceable, the Fourth Circuit noted that the district court had incorrectly "found that [the employer] had marketed [the business] only in Virginia, Nebraska, and perhaps one other state, and therefore [the employer] did not have a legitimate interest in restricting [the employee's] employment throughout the United States." *Id.* at 738. The Circuit Court highlighted the employer's national business, stating that "[t]he district court clearly erred in concluding that [the employer] did not have a national market for [its business]. . . . [The employer's] operation was neither local nor regional, but national." *Id.* at 739–40.

The Court is further not persuaded that the decisions in *Simmons,* 544 S.E.2d at 666, and *Roto–Die Co. v. Lesser,* 899 F.Supp. 1515 (E.D.Va.1995), support a finding that the geographic scope in the instant case dooms the Non–Competition Provision and the Non–Solicitation Provision. In *Simmons,* the Virginia Supreme Court struck down a non-competition provision because of its "lengthy duration" (three years), its "expansion of restrictive functions" (which were "considerably broader than [the employer's] business activity"), and "the lack of *any* geographical limitation . . . ." 544 S.E.2d at 678 (emphasis added). In *Roto–Die,* the court found that the covenant not to compete was geographically overbroad when reading the lack of any geographic limit to mean "worldwide," and finding that the employer failed to show that it needed protection from the employee's competition for five years anywhere in the world. 899 F.Supp. at 1521–22. Unlike *Simmons* and *Roto–Die,* here the Employment Agreement's restrictive covenants have a geographical limitation which appears coterminous with PrecisionIR's business and Clepper's role in that business, only a six-month time

period, and a limited set of restricted activity.

■ Taking into account the geographic scope that, viewing the facts in the light most favorable to PrecisionIR, is coterminous with its business and Clepper's role in that business, and the other fairly narrow temporal and functional limits in the provisions at issue, the Court concludes that PrecisionIR has shown that the terms of these restrictions are reasonable and are narrowly tailored to protect PrecisionIR's legitimate business interests while not prohibiting Clepper from competing in his chosen field. *See Omniplex,* 618 S.E.2d at 342; *Advanced Marine Enter.,* 501 S.E.2d at 155. The Court also finds, based on the above review and analysis, that the restrictive covenants are reasonable and sufficiently narrowly tailored so that they do not offend public policy. *See Omniplex,* 618 S.E.2d at 342.

### b. *The Alleged Ambiguity and Lack of Definition to Terms*

Defendants further contend that the Non–Competition Provision and Non–Solicitation Provision are legally unenforceable because they contain terms that are ambiguous and undefined. While the Court acknowledges the accuracy of Defendants' statement that under Virginia law, merely subjecting an employee to an ambiguous restrictive covenant not to compete offends public policy, *see Roto–Die,* 899 F.Supp. at 1522, the Court also agrees with PrecisionIR's statement that "Defendants make no attempt to establish how these terms are ambiguous and what alternate meanings other than their plain meaning they might have," (Opposition of Plaintiff PrecisionIR to Motion for Summary Judgment of Defendants, dated January 22, 2010, at 16.)

■ The only specific terms that Defendants assert are ambiguous and undefined are the terms "compete" and "solicit to provide any products or services in competition [with PrecisionIR.]" (Defendants' Motion for Summary Judgment, dated December 23, 2009, at 15 (*quoting* Employment Agreement ¶¶ 5, 7).) Defendants state that the Non–Competition Provision and the Non–Solicitation Provision "make no effort to delineate the nature of the competition in which Clepper is forbidden to engage, and instead use 'compete' and 'competition' as catch-all terms." (*Id.*) The Court finds that the plain language of the Employment Agreement is abundantly clear. The Non–Competition Provision restricts a well-delineated swath of competitive actions involving "similar duties, responsibilities or assignments as those [Clepper] performed while employed by [PrecisionIR]," (Employment Agreement ¶ 7), and the Non–Solicitation Provision restricts a similarly well-articulated set of solicitation of "any person or entity that was a client of [PrecisionIR] ... with whom [Clepper] had contact as a result of [his] employment with [PrecisionIR]," (*id.* ¶ 5).

The Court concludes that Defendants have failed to make any valid argument that the terms of the Non–Competition Provision and the Non–Solicitation Provision are ambiguous and undefined and therefore unenforceable as a matter of law. Accordingly, Defendants' motion for summary judgment as to the legal enforceability of the Non–Competition Provision and the Non–Solicitation Provision (and derivatively the legal enforceability of the entire Employment Agreement, according to Defendants' related contention) fails because (1) the geographic scopes of the provisions at issue do not render them unenforceable and (2) the Court does not find any ambiguous or undefined terms that would cause those provisions to offend public policy and therefore to be unenforceable.

### c. *The Validity of the Entire Employment Agreement*

Even if the Court found the Non–Competition Provision and the Non–Solicitation Provision to be unenforceable by reason of their geographic breadth or ambiguity, Defendants' argument that the invalidity of these discrete provisions would render the entire Employment Agreement void is erroneous. Defendants seem to conflate the doctrine of blue-pencilling with a proposition that the instant contract is non-severable. Defendants misstate the law when they write (notably with no supporting legal authority) that "Virginia does not allow 'blue-pencilling' of contracts with invalid provisions, and the agreement's geographic overbreadth and its vague, undefined terms *cause the entire contract to fail.*" (Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, dated February 11, 2010, at 4–5 (emphasis added).)

▮ A Virginia court can sever unenforceable restrictive covenants from an otherwise enforceable agreement—whether or not the court blue-pencils individual restrictive covenants. *See Roto–Die,* 899 F.Supp. at 1522–23 (dismissing claims for breaches of certain clauses of an employment agreement as geographically overbroad, but severing them from the otherwise enforceable independent clauses); *id.* ("[Both courts in Virginia and outside of Virginia] decline to hold an entire agreement invalid when the agreement contains an invalid covenant not to compete. The mere fact that a noncompete covenant is void does not render void the remainder of the employment contract. Instead, the invalid provision may be severed from the contract and the valid provision enforced . . . ." (quotation marks and citation omitted)). As the court in *Roto–Die* stated, "[t]he difference between 'blue pencilling' and severing is a matter of focus. The former emphasizes deleting, and in some jurisdictions adding, words in a particular clause. The latter emphasizes construing independent clauses independently" and the "two propositions are not inconsistent." *Id.* at 1523. That the Employment Agreement itself is severable by its own terms, (*see* Employment Agreement ¶ 11(D)), only further supports the Court's conclusion. Lastly, Defendants' contention that an entire contract is void by operation of law if any one of its manifold provisions renders the entire contract unenforceable because, for example, that provision contains an ambiguous word, simply runs against common sense.

▮ Accordingly, even if the Court found one or both of the two challenged provisions to be unenforceable, which the Court does not, it would still not invalidate the entire Employment Agreement. Thus, because the Court has upheld the Non–Competition Provision and the Non–Solicitation Provision at this stage, and because even if the Court found these provisions legally unenforceable it would still not void the entire contract and thus nullify the other three provisions at issue in PrecisionIR's breach of contract claim, the Court concludes that all five of the restrictive covenants at issue are legally enforceable.

### 2. *Whether Clepper Breached the Employment Agreement*

The second element of a breach of contract claim under Virginia law is a party's violation or breach of the legally-enforceable obligation at issue. *See Filak,* 594 S.E.2d at 614. Defendants assert that PrecisionIR has failed to identify facts in the record—even when construed most favorably to PrecisionIR as the non-moving party—sufficient to preclude summary judgment as to its two grounds for breach of contract. The Court examines each provision that PrecisionIR claims Clepper

breached and whether the facts in the record support each alleged breach with sufficient admissible evidence to survive summary judgment.

First, Defendants claim that no facts support a finding that Clepper breached the Non–Competition Provision. Defendants argue that PrecisionIR and Talk-Point do not compete and that therefore Clepper was not breaching the Non–Competition Provision by working with Talk-Point. Defendants purport that Precision-IR and TalkPoint operate in different businesses, like McDonald's and Microsoft. Viewing the facts of the record in a light most favorable to PrecisionIR, the Court disagrees.

 TalkPoint, which employed Clepper during the relevant time period, has a significant webcasting business. While at PrecisionIR, Clepper worked for its webcasting section in a sales-related position. Clepper's job description, responsibilities, and duties at TalkPoint are substantially similarly to those he had at PrecisionIR, i.e., sales of webcasting services. Talk-Point's CEO, Nicholas Balletta ("Balletta"), testified that "a hundred percent of our business overlaps with probably 10 percent of theirs." (Michaels Decl., Ex. D at 41.) Mr. Balletta acknowledged that the companies competed over at least one client's business—SNL Financial. (*Id.* at 51.) Further, with over a dozen identified common clients or clients which both companies have solicited for business, Clepper and TalkPoint are, when construing the facts most favorably to PrecisionIR, clearly in competition with PrecisionIR. Talk-Point may disagree with some of these facts, but that shows only that there are genuine issues of material fact as to the character of each company's business, their overlap in the marketplace, and Clepper's duties, responsibilities, and assignments at both employers, that preclude

summary judgment as to whether Clepper breached the Non–Competition Provision.

 With regard to the Non–Solicitation Provision, Defendants assert that PrecisionIR has adduced no facts to support a finding of breach. Defendants seem to base this argument on the proposition that there is no genuine issue of material fact as to the lack of competition between PrecisionIR and TalkPoint, which the Court has already dispelled. Further, the evidence in the record, when drawing reasonable inferences in favor of PrecisionIR as non-movant, is replete with facts demonstrating Clepper's contact with various clients while he worked with PrecisionIR, Clepper's efforts at solicitation of those clients on behalf of TalkPoint during the relevant time period, and the resulting sales from those solicitations. For example, within six months of his departure from PrecisionIR, Clepper had contact with at least nine clients with whom he had contact as a PrecisionIR employee. A reasonable factfinder could infer from these facts that Clepper's contact constituted prohibited solicitation under the Non–Solicitation Provision. Thus, the Court cannot conclude that no rational jury could find in favor of PrecisionIR because of a paucity of evidence presented by PrecisionIR.

 Defendants also contend, for the very first time in their reply papers, that no facts in the record support a finding that Clepper violated the other three provisions at issue: the Non–Raiding Provision, the Offer–Notice Provision, and the Confidential–Information Provision. As mentioned above, the Court will not consider new arguments in reply papers. While Defendants claim that they have in fact addressed these additional provisions in their moving brief, the Court finds that they have quite clearly not moved for summary judgment on the basis that Preci-

sionIR has presented a paucity of evidence to support these alleged breaches. Even if Defendants did brief these issues, in reviewing the various summary judgment papers and the record as a whole, the Court sees a fact-intensive inquiry ripe for trial as to whether or not Clepper raided Slawter from PrecisionIR, whether or not Clepper informed PrecisionIR of his offer to work for TalkPoint, and whether or not Clepper disclosed confidential information to TalkPoint. Accordingly, PrecisionIR's breach of contract claim as it relates to alleged violations of the (1) Non–Raiding Provision, (2) Offer–Notice Provision, and (3) Confidential–Information Provision remains at issue.

### 3. *Whether PrecisionIR Suffered Damages*

The third prong of a breach of contract claim under Virginia law is "injury or damage to the plaintiff caused by the breach." *Filak*, 594 S.E.2d at 614. When construed most favorably to PrecisionIR, the facts in the record would reasonably support a finding that PrecisionIR was injured by Clepper's purported breaches of the five contractual provisions at issue. For example, from at least five of the nine PrecisionIR clients Clepper contacted while working with TalkPoint, TalkPoint earned at least $100,000 in revenue. Also, Clepper's activity in the six-month period after his termination from PrecisionIR yielded at least $100,000 in revenue to TalkPoint. The damages caused by any breach of the Non–Raiding Provision, Offer–Notice Provision, and Confidential–Information Provision also raise genuine issues of material fact. Thus, the Court concludes that PrecisionIR's breach of contract cause of action against Clepper for his alleged breach of five discrete provisions in the Employment Agreement survives summary judgment.

### C. *TORTIOUS INTERFERENCE*

PrecisionIR asserts claims against TalkPoint for tortious interference with business relations, employer-employee relations, and contracts. These tortious interference claims involve interference with (1) PrecisionIR's clients and prospective clients (*see* Am. Compl. ¶¶ 80–81), (2) its employer-employee relationship with Clepper and Slawter (*see id.* ¶¶ 82–83), and (3) its employment contracts with Clepper and Slawter (*see id.* ¶¶ 82–84). Under Virginia law:

> [t]o prove a claim of tortious interference with actual and prospective contracts and business relationships, a plaintiff must show that: (1) there was a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) the defendant had knowledge of that relationship or expectancy; (3) there is a reasonable certainty that absent the defendant's intentional misconduct, the plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to the plaintiff.

*Buffalo Wings Factory, Inc. v. Mohd,* 622 F.Supp.2d 325, 336 (E.D.Va.2007) (*citing Commercial Bus. Sys., Inc. v. Halifax Corp.,* 253 Va. 292, 484 S.E.2d 892, 896 (1997)).

 TalkPoint's motion for summary judgment on PrecisionIR's tortious interference claim fails for two reasons. First, with regard to PrecisionIR's claim that TalkPoint tortiously interfered with the Employment Agreement and the Slawter Employment Agreement, Defendants argue that TalkPoint could not have done so because TalkPoint was not even aware of the existence of either contract. The Court is not persuaded that a reasonable factfinder could not determine otherwise based on what is a highly-fact-intensive inquiry. For example, Balletta testified

that it was his understanding that Talk-Point asked Clepper if he "had a noncompete agreement" when it hired him. (Michaels Decl., Ex. D at 33.) Also, Slawter testified that before he left PrecisionIR and joined TalkPoint, he discussed with TalkPoint his concern about his Precision-IR employment contract's non-competition terms and his fear that PrecisionIR would try to enforce those terms against him. TalkPoint nevertheless hired Slawter. A reasonable factfinder could infer from these facts that TalkPoint knew that both Clepper and Slawter had employment contracts with PrecisionIR that restricted them from competing with PrecisionIR. Thus, Defendants have not met their burden of showing no genuine issue of material fact as to TalkPoint's knowledge of these employment agreements, and thus have failed to establish that no triable issue remains for adjudication on this aspect of PrecisionIR's tortious interference claim.

Second, PrecisionIR asserts its tortious interference claim based on three instances of alleged wrongdoing, two of which would survive summary judgment even if TalkPoint had no knowledge of the Employment Agreement and the Slawter Employment Agreement. Defendants' motion for summary judgment addresses only PrecisionIR's third tortious interference claim—interference with the employment contracts. As such, because Defendants have not challenged PrecisionIR's tortious interference claim arising out of the alleged interference with (1) PrecisionIR's clients and prospective clients and (2) its employer-employee relationship with Clepper and Slawter, PrecisionIR may also pursue those claims at trial.

### D. *STATUTORY CONSPIRACY*

PrecisionIR's third, and final cause of action, asserts Statutory Conspiracy. This claim alleges that Defendants "combined, associated, agreed, mutually undertook, and concerted together for the purpose of willfully and maliciously injuring Precision-IR in its business, and to procure the breach of the [Employment Agreement.]" (Compl. ¶ 88.[4]) Defendants claim that PrecisionIR has not identified facts—even when construed in the light most favorable to PrecisionIR—sufficient to defeat summary judgment on the Statutory Conspiracy claim.

"In pertinent part, Code § 18.2–499 permits ... liability [for Statutory Conspiracy] where [a]ny two or more persons ... combine, associate, agree, mutually undertake or concert together for the purpose of ... willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever." *Simmons*, 544 S.E.2d at 676–77 (*quoting* § 18.2–499) (second alteration in original). For the purposes of Statutory Conspiracy, "a 'person' is any person, firm, corporation, partnership or association." Va.Code Ann. § 18.2–501(b).

Defendants advance three main arguments to support their motion for summary judgment on the Statutory Conspiracy claim. First, with regard to the concerted-effort requirement, Defendants contend that PrecisionIR has adduced no proof that Clepper and TalkPoint "combined, associated, agreed, or mutually undert[ook] together" any action here. § 18.2–499. The Court, however, does not find a paucity of evidence presented by PrecisionIR addressing this issue, and agrees with PrecisionIR that determining

4. PrecisionIR defines the term "Non–Competition Agreement" in the Complaint to mean the Employment Agreement, and not simply the Non–Competition Provision. (Compl. ¶ 43.)

whether Clepper and TalkPoint acted in concert is a highly fact-intensive inquiry, appropriate for adjudication on the merits. Several disputed facts, when viewed most favorably to PrecisionIR, could lead a reasonable factfinder to conclude that Clepper and TalkPoint worked in concert here, including that (1) TalkPoint hired Clepper to compete with PrecisionIR, (2) hired Slawter with the help of Clepper, and (3) through Clepper solicited business from PrecisionIR's clients with whom Clepper had contact while working for PrecisionIR.

Second, Defendants argue that Talk-Point had no knowledge of Clepper's Employment Agreement in the relevant time period, so could not possibly have conspired with Clepper to help him breach his obligations under that agreement and injure PrecisionIR. Once again, Defendants' knowledge of the Employment Agreement—especially given the evidence that TalkPoint asked Clepper whether he was bound by a non-competition agreement when it hired him and that TalkPoint hired Slawter after he informed TalkPoint of the Slawter Employment Agreement—could lead a reasonable finder of fact to infer that Defendants knew about Clepper's Employment Agreement.

Defendants' third argument goes to the requisite mental state to support a Statutory Conspiracy claim. To establish a sufficient Statutory Conspiracy claim, PrecisionIR must show at trial that the concerted action was carried out "for the purpose of ... willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever." § 18.2–499; *see Simmons,* 544 S.E.2d at 677 ("[T]he plaintiff must prove by clear and convincing evidence that the conspirators acted intentionally, purposefully, and without lawful justification."). However, Virginia law does not require proof of actual malice, personal spite, or that the primary or overriding purpose is to injure another's trade or business. *See Commercial Bus. Sys. Inc. v. BellSouth Servs., Inc.,* 249 Va. 39, 453 S.E.2d 261, 266–67 (1995); *see also Simmons,* 544 S.E.2d at 677.

Reviewing the evidence in the light most favorable to PrecisionIR, a reasonable finder of fact could determine that Clepper and TalkPoint had the requisite intent and lack of justification for their actions in the business activities at issue. For example, the evidence shows that Clepper very well may have lied to PrecisionIR about the reasons for his departure when he stated that he was leaving to work in a family construction business and that Clepper lied because he and TalkPoint did not want PrecisionIR to know that they were going to compete with PrecisionIR, use him to solicit PrecisionIR's clients, raid a PrecisionIR employee, and gain access and knowledge to PrecisionIR's confidential information for the benefit of TalkPoint's competitive business. If a factfinder further determined that TalkPoint and Clepper were aware of the Employment Agreement, these facts would be even more probative of willfulness or maliciousness. Accordingly, the Court concludes that Defendants have not carried their burden to show that no disputed issue of material fact exists to preclude a trial of PrecisionIR's Statutory Conspiracy claim.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 49) of defendants Brent A. Clepper and TalkPoint Holdings, L.L.C. d/b/a/ TalkPoint Communications for summary judgment is DENIED; and it is further

ORDERED that a conference is scheduled for March 19, 2010 at 9:15 a.m. to discuss preparations for trial.

SO ORDERED.