COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and Fulton
Argued at Norfolk, Virginia


SOTHERLY HOTELS INC., ET AL.
                                                MEMORANDUM OPINION* BY
      v.      Record No. 1981-22-1              JUDGE GLEN A. HUFF
                                                SEPTEMBER 24, 2024
FIREMAN'S FUND INSURANCE COMPANY, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Jan L. Brodie, Judge Designate

Matthew J. MacLean (Joseph D. Jean; Scott D. Greenspan; James
J. O'Keeffe IV; E. Kyle McNew; Pillsbury Winthrop Shaw
Pittman LLP; MichieHamlett PLLC, on briefs), for appellants.[1]

Brett Solberg (Olivia Houston; Vincent J. Palmiotto; Jonathan
Hacker; James H. Revere, III; Taryn M. Kadar; Zachary J.
Ferreira; Diane Montgomery; Robert T. Pindulic; Matthew A.
Lafferman; DLA Piper LLP (US); Clyde & Co US LLP;
O'Melveny & Myers LLP; Kalbaugh, Pfund & Messersmith, P.C.;
Fields Howell LLP; Midkiff, Muncie & Ross, P.C.; White
and Williams LLP; Dentons US LLP, on brief), for appellees.[2]


Sotherly Hotels Inc., Sotherly Hotels LP, and Our Town Hospitality, LLC (collectively,

"appellants") appeal a decision from the Circuit Court of the City of Williamsburg and James

City County (the "circuit court") sustaining appellees' demurrer and dismissing appellants'

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Mr. MacLean delivered oral argument on behalf of all appellants.

[2] Mr. Solberg delivered oral argument on behalf of all appellees.

breach of contract case with prejudice.[3]  Appellants contest that judgment on appeal, claiming

the circuit court erred in determining that the complaint did not sufficiently allege direct physical

loss or damage, as required for coverage under the contractual policies between appellants and

their insurance providers, appellees.  For the following reasons, this Court affirms the circuit

court's judgment sustaining the demurrer and dismissing the case.

BACKGROUND[4]

Appellants own and operate several hotels in Virginia, Florida, Georgia, Indiana,

Maryland, North Carolina, Pennsylvania, and Texas.  The hotels generate revenue through guest

occupancy as well as food and drink sales.  Between 2020 and 2021, as a collateral consequence

of the COVID-19 pandemic, appellants experienced a decrease in business, which in turn caused

them to reduce the functional capacity of their hotels by implementing temporary closures or

cessation of certain services, and reduced hours for employees.  The result of these measures was

a "sharp decline" in appellants' revenue, for which they sought compensation under their

insurance policies with appellees.  Specifically, appellants claimed they were entitled to coverage

for the "direct physical loss or damage to property and business interruption" caused to their

---

[3] Appellees are Fireman's Fund Insurance Company ("Fireman's Fund"), American Automobile Insurance Company ("American Auto"), Westchester Surplus Lines Insurance Company ("Westchester"), Great Lakes Insurance SE ("Great Lakes"), General Security Indemnity Company of Arizona ("General Security"), Crum & Forster Specialty Insurance Company ("Crum & Forster"), and Western World Insurance Company ("Western World"). These companies insured appellants' properties in 2019-2020 and 2020-2021.

Zurich American Insurance Company ("Zurich") was originally named as a defendant in the complaint and filed a separate demurrer.  On June 23, 2022, the circuit court granted appellants' motion to non-suit Zurich.

[4] On appeal from a sustained demurrer, this Court "accept[s] as true all factual allegations expressly pleaded in the complaint and interpret[s] those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health System*, 295 Va. 351, 358 (2018); *see also Wright v. Graves*, 78 Va. App. 777, 784 (2023).

hotels by COVID-19. Appellees denied the multiple requests for coverage, explaining that appellants had not proven any harm coverable under the policy provisions.

On February 28, 2022, appellants filed a complaint against appellees in the circuit court. Appellants sought a declaratory judgment that their business losses were covered under the insurance policies and they raised a breach of contract claim based on appellees' refusal to provide coverage under the policies. Both requests relied upon appellants' interpretation of the insurance policies, namely, that the contractual provisions requiring "physical loss or damage" included losses or damages caused by the pandemic.[5] Appellees responded by asserting that the losses allegedly caused by COVID-19, for which appellants sought compensation, were not covered under their insurance policies either in explicit terms or by general provisions for "physical loss or damage."

In their complaint, appellants broadly alleged three ways they experienced "physical loss or damage" to their properties resulting from the impact of COVID-19 on each hotel's "functional use" either "in whole or in part": (1) through the presence of COVID-19 droplets in the air and on the surfaces inside each hotel; (2) "through the need to modify physical behaviors by social distancing, avoiding confined indoor spaces, and avoiding congregating in the same physical area as others . . . to reduce or minimize the potential for viral transmission [of COVID-19]"; and (3) "through the need to mitigate the threat or actual physical presence of [COVID-19] on frequently touched surfaces and objects" such as "door handles, bathrooms faucets, miscellaneous surfaces, in heating and air conditioning systems . . . or on any other of the multitude of places that [COVID-19] has been or could be found." Moreover, according to

---

[5] As discussed further below, the declaratory judgment request is subsumed by the first element for a breach of contract action, which requires proof that the defendant owes plaintiff a duty created by the common contract at issue.

appellants, those alleged "physical" losses and damages "dramatically decreased" the hotels' revenue, causing appellants to suffer "substantial [financial] losses."

On April 28, 2022, appellees filed a demurrer alleging that the complaint failed to state a cognizable legal claim. They asserted that appellants had "failed to state facts showing 'direct physical loss or damage,'" as required under the insurance policies, "thereby fail[ing] to state facts showing [their entitlement to] coverage" under various provisions in the individual policies. Appellees also pointed to several other provisions in the insurance policies that they claimed would explicitly preclude appellants from gaining coverage for the alleged financial losses.[6]

In considering the demurrer, the circuit court concluded that it could not ascertain whether the complaint alleged sufficient facts to establish a prima facie case for breach of contract without first reviewing and interpreting the terms of the contracts at issue—the insurance policies. Specifically, whether appellees breached a duty owed to appellants under the terms of the insurance policies required the circuit court to determine the meaning and scope of the term "physical loss or damage." None of the insurance policies at issue include a separate definition of the phrase "physical loss or damage." An overview of the policies' provisions relevant to appellants' claims is provided below.

Insurance Policy Provisions Relating to Appellants' COVID-19 Claims

Appellants seek relief under several different provisions within their insurance policies, particularly the General Property Coverage, Business Income and Expense Coverage,

---

[6] Appellees' claims that certain provisions would preclude coverage are better suited for a plea in bar rather than the current demurer at issue on appeal. "A plea in bar asserts a single issue, which, if proved, creates a bar to [appellants'] recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). A demurrer, on the other hand, "tests [only] the legal sufficiency of facts alleged in pleadings[.]" *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557 (2011) (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 357 (2010)).

Communicable Disease Coverage, Civil Authority Coverage, and Crisis Management Coverage.[7] Although divided into three so-called "programs"—the Main Program, the Hollywood Program, and the Georgian Terrace Program—the provisions in each insurance policy are substantially similar and discussed separately below based on the type of coverage provided.[8]

I. Standard Coverage for Physical Losses and Damages

All three "programs" use nearly identical language in providing General Property Coverage for physical losses and damages. The Main Program and the Georgian Terrace Program both offer coverage "for direct physical loss or damage" to insured property that is "caused by or resulting from" either: a "covered cause of loss" (Main Program) or "any Cause of Loss not otherwise excluded from this policy" (Georgian Terrace Program). The Hollywood Program similarly "insures against all risk of direct physical loss or damage to insured property . . . except as hereinafter excluded."

All three programs also contain a narrower Business Income Coverage provision that covers loss of income or extra expense caused by suspension of the business's operations. Such suspension, however, must have been caused by "direct physical loss or damage" to the property. Therefore, to establish a claim under either the General Property or Business Income provisions, appellants must plead sufficient facts establishing "physical loss or damage" for each individual hotel, regardless of which "programs" are contained within each property's insurance policy.

---

[7] Note that some provisions within these policies include bolded terms, which are terms of art within the polices. Only the pertinent terms are defined herein.

[8] The Main Program was drafted by appellee Fireman's Fund and insures ten hotels. The "primary property policies" of the Hollywood Program, which insure three hotels, were drafted by appellee Westchester. Likewise, appellees Great Lakes, General Security, Crum & Forster, and Western World also provided "excess policies" for the Hollywood Program. Finally, the Georgian Terrace Program insured one hotel and appellee American Auto provided coverage from April 1, 2019, to April 1, 2020; coverage between April 1, 2020, and April 1, 2021, was provided by Zurich who appellants non-suited from the case on June 23, 2022.

II. Communicable Disease Coverage

Both the Main Program and the Georgian Terrace Program include a "communicable disease" coverage provision, which functions as additional coverage beyond what is provided for under the standard General Property and Business Income sections.[9] The Main Program characterizes its communicable disease provision as an "extension of coverage," which states:

> a. (1) We will pay for *direct physical loss or damage* to **Property Insured** caused by or resulting from a *covered communicable disease event* at a location including the following necessary costs incurred to:
>
> > (a) Tear out and replace any part of **Property Insured** in order to gain access to the **communicable disease**;
> >
> > (b) Repair or rebuild **Property Insured** which has been damaged or destroyed by the **communicable disease**; and
> >
> > (c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the **communicable disease**.
>
> (2) If the Declarations show a Limit of Insurance for Business Income and Extra Expense Coverage, then we will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the *necessary* **suspension** *of* **operations** *during the* **period of restoration**. *The* **suspension** *must be due to direct physical loss or damage to property at a location caused by or resulting from a covered* **communicable disease event**.
>
> b. (1) We will not pay under Communicable Disease Coverage for any loss, damage, or expense caused by or resulting from:
>
> > . . . .
> >
> > (b) Testing or monitoring to assess the existence, concentration, or effects of a **communicable disease** or

---

[9] From review of the record, it does not appear that the Hollywood Program includes coverage for communicable diseases as defined in the other two programs. Rather, the Hollywood Program states that the "policy does not cover loss or damage caused by . . . CONTAMINANTS or POLLUTANTS" and it includes viruses in its definition of "contaminants or pollutants."

- 6 -

**pollutants** beyond ninety (90) consecutive calendar days following the date when damaged property is remediated, repaired, rebuilt, or any combination thereof; or

(c) A claim that has been reported to us in writing after thirty (30) consecutive calendar days from the date **the public health authority** ordered the location to be evacuated, decontaminated, or disinfected due to the **communicable disease event**.[10]

(Emphases added).

The Main Program expressly defines "communicable disease," "communicable disease event," and "period of restoration" as follows:

---

[10] "**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, and waste. Waste includes material to be recycled, reconditioned, or reclaimed."

"**Public health authority** means the governmental authority having jurisdiction over your **operations** relative to health and hygiene standards necessary for the protection of the public."

**Business income** means:

(1) The net profit or loss before income taxes from your **operations** including:

(a) The sales of merchandise or services;

(b) The net sales value of manufacturing production;

(c) Previously documented grants, research contracts, fund raising, or donations likely to reoccur;

(d) The lease or rental of tenant occupancies at a location, as furnished and equipped by you;

(2) Continuing normal operating expenses incurred, including your continuing normal payroll expenses;

(3) Charges which are the legal obligation of your tenants but would otherwise be your obligations; and

(4) The fair rental value of any portion of a location occupied by you; that would have been earned or incurred by you had there been no covered loss or damage.

- 7 -

10. **Communicable disease** means any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human.

11. **Communicable disease event** means an event in which a **public health authority** has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a **communicable disease** at such location.

. . . .

50. a. **Period of restoration** means the period of time that begins immediately after the time of direct physical loss or damage caused by or resulting from a **covered cause of loss** to property at the **location** and ends on the earlier of:

   (1) The date when such property at the **location** should be repaired, rebuilt, or replaced with reasonable speed and like kind and quality; or

   (2) The date when business is resumed at a new permanent location.

   b. **Period of restoration** does not include any increased period due to the enforcement of any **ordinance or law**, including any **ordinance or law** that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**.

The Georgian Terrace Program offers similar coverage and definitions under its "Communicable Disease Extra Expense" provision, which extends the standard coverage to include "the actual necessary expense you incur due to a communicable disease event occurring at your premises." Likewise, any coverage for "extra expenses" must "be the result of a communicable disease event that has taken place at a covered location." This provision also places other restrictions on the availability of such coverage. For example, coverage is not provided for loss "caused directly or indirectly" by "(c) [t]he cost of replacing actual or suspected contaminated property from the insured location, or any other location[.]"

III. Civil Authority Coverage

The Main Program and the Georgian Terrace Program use similar language in providing coverage for losses in the event that a civil authority prohibits access to the insured property. This provision in the Georgian Terrace Program states:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This Additional Coverage will apply from the date of that action for a period of up to the number of consecutive weeks shown in the schedule for **Civil Authority**.

The Civil Authority Coverage provision in the Main Program provides somewhat stricter coverage limits:

> We will pay for the actual loss of **business** income and necessary **extra expense** you sustain due to the necessary **suspension** of your **operations** caused by action of civil authority that prohibits access to a **location**. Such prohibition of access to such **location** by a civil authority must:
>
> (1) Arise from direct physical loss or damage to property other than at such **location**; and
>
> (2) Be caused by or result from a **covered cause of loss**; and
>
> (3) Occur within the number of miles stated in the Declarations from such **location**.

The Hollywood Program also provides a similar policy for coverage "starting from the time of physical damage, loss sustained during the period of time when access to covered real or personal property is impaired by order or action of civil or military authority . . . ."

IV. Crisis Management Coverage

The Main Program and the Georgian Terrace Program further provide coverage in the instance of a "crisis event" impacting business income.[11] The Georgian Terrace Program provides that:

> We will pay for the actual loss of **crisis event business income** you sustain due to the *necessary **suspension** of your **operations*** during the **crisis event period of restoration**. The suspension must be caused by or result from a covered **crisis event** at your **covered premises**.[12]

(Emphasis added). For purposes of this particular provision, a "crisis event" based on "[p]remises contamination" is defined as the "[n]ecessary closure of your **covered premises** due to any sudden, accidental and unintentional contamination or impairment of the **covered premises** . . . which results in clear, identifiable, internal or external visible symptoms of bodily injury, illness, or death of any person(s)." This includes the closure of a premises contaminated by a "communicable disease" but excludes "pollutants."

Under the Main Program, a covered "crisis event" must "result[] in significant adverse regional or national news media coverage" of appellants or their properties. Appellants make no allegations of such negative press in their pleadings.

Demurrer Hearing

On November 15, 2022, the circuit court conducted a hearing on appellees' demurrer. Appellee Westchester, whose hotels were subject to the Hollywood Program, relied only on the

---

[11] It is unclear from the record whether the Hollywood Program provides Crisis Coverage.

[12] "If the necessary **suspension** of your **operations** caused by or resulting from a **covered crisis event** produces a **crisis event business income** loss payable under this policy, we will pay for the actual loss of **crisis event business income** you incur . . . ." "**Suspension**" is defined as either "[t]he slowdown or cessation of your business activities" or "[t]hat a part or all of the **covered premises** is rendered untenantable."

- 10 -

arguments in its brief in support of the demurrer. Counsel for remaining appellees, whose hotels were subject to the Main Program and the Georgian Terrace Program, primarily argued that appellants did not adequately plead "direct physical loss or damage to property," which was a necessary condition for coverage under the applicable insurance policies. In response, appellants claimed the policies recognized that communicable diseases could cause physical loss or damage for which appellees were responsible to cover.

Counsel for appellees also argued that appellants (1) did not cite to any orders from a civil authority requiring any of the hotels be shut down, as required under the Civil Authority Coverage provisions, and (2) did not allege the existence of any "significant, adverse regional or national news media coverage" directed at appellants or their properties, as required under the Crisis Management Coverage provisions.

The circuit court found, within the context of the parties' insurance policies, that

> [d]irect physical losses do no not encompass the impact of the virus droplets on the property. There needs to be[] . . . a more physical alteration of the property or it must be physically lost. The Court does not find that the mere attachment of the droplets to the property changes it to any degree that it would justify finding direct physical damage or loss.

It then addressed why the other specific provisions that appellants referenced did not (i) separately establish entitlement to the coverage sought, or (ii) either counteract or provide an exception to the underlying "physical loss or damage" requirement.

Regarding the communicable disease provisions, the circuit court held that appellants had not sufficiently pled entitlement to that coverage because, "in addition to finding no direct loss," the alleged "[executive] order did not require evacuation or disinfectant" of appellants' properties "and therefore it did not meet the requirements." Similarly, the provisions for crisis management coverage were inapplicable because appellants had made "no allegation of specific adverse news media," either regional or national, nor alleged closure as required. Moreover, in

- 11 -

accordance with its initial interpretation of "physical loss or damage" in the context of COVID-19, the circuit court determined that appellants' pleadings did not sufficiently allege "direct physical loss or damage" that would be covered under the civil authority coverage provisions.

Accordingly, based on appellants' insufficient allegations of fact, the circuit court held:

> all claims requiring direct physical loss or damage, *such as* the general policy coverage, the business income and extra expense coverage, the communicable disease extra expense, and [the] crises event business income coverages[,] [as] cited under the . . . American Auto policies are dismissed on demurrer.[13]

(Emphasis added). In its final order, issued on November 28, 2022, the circuit court sustained appellees' demurrer and dismissed appellants' complaint in full, with prejudice, "for the reasons stated at the hearing on November 15, 2022." This appeal followed.

## ANALYSIS

On appeal, appellants broadly assert that the circuit court erred by sustaining appellees' demurrer and dismissing the complaint with prejudice.[14] Consequently, this Court reviews the record only to determine whether appellants pled sufficient facts to establish a prima facie case

---

[13] The circuit court referred to American Auto's "crises event business income coverage" merely as an example of the type of provisions in appellees' policies in which physical loss or damage was a prerequisite for reimbursement. Because all of appellees' policies contain substantially similar provisions, which was the basis for the filing of a joint demurrer, the circuit court's ruling on the demurrer applied to all the remaining defendants and dismissed all of appellants' claims that relied on allegations of physical loss or damage.

[14] Appellants' assignment of error makes no express argument as to why the circuit court erred in granting appellees' demurrer. In their briefs, however, appellants advance three arguments in support of their claim that the circuit court erred in granting the demurrer and dismissing the case. First, appellants maintain they pled sufficient facts to establish a claim of physical loss or damage for which they were entitled to insurance coverage. Next, appellants also allege that the pleadings show they were entitled to special coverage under the Fireman's Fund Policies of the Main Program. Lastly, appellants assert that no exclusions in the policies operate to bar coverage for their claims. That final argument need not be addressed directly; appellants' request for declaratory judgment is subsumed by this Court's finding that they have not sufficiently pled a breach of contract claim.

- 12 -

for breach of contract. That inquiry necessarily requires this Court to assess what "physical loss or damage" means within the context of the parties' insurance policy contracts.

I. Standard of Review

"The purpose of a demurrer is to determine whether [a] pleading . . . state[s] a cause of action upon which relief can be given." *Steward v. Holland Family Props., LLC*, 284 Va. 282, 286 (2012). "A demurrer [is properly] sustained when the pleading it challenges lacks 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.'" *Mark Five Constr., Inc. v. Castle Contr.*, 274 Va. 283, 287-88 (2007) (quoting *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122 (2006)). This Court reviews a circuit court's decision to sustain a demurrer under a de novo standard of review because it is a pure question of law. *Id.* at 287. In doing so, this Court "accept[s] as true all properly pled facts and all inferences fairly drawn from those facts." *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557 (2011) (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 357 (2010)). "That interpretative deference, however, requires us to 'distinguish allegations of historical fact from conclusions of law.'" *Anderson v. Dillman*, 297 Va. 191, 194 (2019) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 359 (2018)).

This Court also reviews the provisions of an insurance contract de novo. *TravCo Ins. Co. v. Ward*, 284 Va. 547, 552 (2012). "Courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *Id.* "It is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Barber v. VistaRMS, Inc.*, 272 Va. 319, 329 (2006). "No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36 (1995).

II. Appellants Did Not Sufficiently Plead a Breach of Contract Claim

Appellants' breach of contract claim is premised on the assertion that the harms they suffered due to the COVID-19 pandemic qualify as "physical loss[es] or damage[s]" for which they are entitled to coverage under their insurance policies with appellees. Appellants also assert their entitlement to coverage under special provisions in the contracts that do not require proof of physical loss or damage. If sufficiently pled, either argument could support a prima facie case of contractual breach for appellees' refusal to pay appellants' insurance claims "or otherwise honor [their] promises."

To sufficiently plead a breach of contract claim, a plaintiff must allege specific facts showing "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004). Here, that means appellants had to prove that (1) they were entitled to coverage under the provisions of their insurance policies for the claimed harms caused by COVID-19; (2) appellees refused to provide the coverage for which appellants were entitled; and (3) appellants suffered additional costs because of appellees' refusal to provide the required coverage as requested in appellants' insurance claims. To determine whether appellants pled sufficient facts to establish the first element, this Court must first interpret what "physical loss or damage" means within the context of the parties' insurance policy contracts.

### General Coverage for "Physical Loss or Damage"

As mentioned above, each "program" contains general provisions for coverage caused by "physical loss or damage," even though that term is not separately defined. The Supreme Court of Virginia has yet to construe "physical loss or damage" in the context of insurance contracts for

- 14 -

coverage based on claims of COVID-19.[15]  Nevertheless, the Court has held that coverage for

physical loss or damage applies in circumstances where tangible harm has been proven.  *See*

*Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 260 Va. 77, 89 (2000) (confirming coverage

for physical loss or damage to insured property because of a "windstorm" or "water damage"

which caused an insured dock to collapse).[16]  That interpretation accords with the plain meaning

of the words.

When interpreting contractual provisions, this Court applies the plain meaning of words

but interprets them within context of the entire contract.  The Merriman-Webster Dictionary

defines "physical," "loss," and "damage" as follows:  (1) "physical" is "having material

existence: perceptible especially through the senses and subject to the laws of nature"; (2)  "loss"

is "the act or fact of being unable to keep or maintain something"; and (3) "damage" is "loss or

harm resulting from injury to . . . property . . . ."  *Physical*, Merriam-Webster.com,

https://www.merriam-webster.com/dictionary/physical (last visited September 20, 2024); *Loss*,

Merriam-Webster.com, https://www.merriam-webster.com/dictionary/loss (last visited

---

[15] In *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Company*, 95 F.4th 181 (4th Cir. 2024), the Fourth Circuit applied Virginia law in affirming that "direct physical loss" requires "present or impending material destruction or material harm."  *Id.* at 190 (quoting *Uncork & Create LLC, v. Cincinnati Ins. Co.*, 27 F.4th 926, 933 (4th Cir. 2022)). Although not binding, this Court notes that the facts in *Elegant Massage* are similar to those in the case at hand.  And based on those facts, the Fourth Circuit determined that executive orders forcing appellant to shut down because of COVID-19 "did not physically alter the covered property to require repair, rebuilding, replacement, or relocation . . . [and thus,] the policy's coverage for loss of income and extra expenses does not apply . . . based solely on the closure mandated by those orders."  *Id.*

[16] Other jurisdictions in the United States support Virginia's interpretation that physical loss or damage requires tangible harm.  For example, the Third Circuit held that "the mere presence of asbestos" was not enough to trigger coverage under appellant's physical loss or damage policy. *Port Auth. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 232 (3d Cir. 2002).  There, the court determined that physical loss or damage "could be found only if an imminent threat of asbestos release existed, or actual release of asbestos resulted in contamination of the property so as to nearly eliminate or destroy its function, or render it uninhabitable."  *Id.*

September 20, 2024); *Damage*, Merriam-Webster.com, https://www.merriam-webster.com/ dictionary/damage (last visited September 20, 2024). Thus, accepting that the general and common understanding of "physical loss or damage" requires allegations of tangible harm, not a mere "microscopic" impact, this Court finds that appellants have not alleged sufficient facts to trigger coverage under the insurance contracts' "physical loss or damage" provisions.

The premise of appellants' complaint is that their financial losses and reduction in functional capacity caused by COVID-19 are coverable as "physical loss[es] or damage[s]" under their insurance policies with appellees. Merely stating that conclusion, however, does not make it so. Nor does appellants' argument that COVID-19, in the form of airborne droplets, "physically transformed the composition of the surfaces and air within [their hotels] at a microscopic level" support a finding that COVID-19 caused direct and tangible loss or damage to appellants' properties.

For example, appellants broadly stated there were "at least three ways" that they "experienced physical loss or damage." First, the "presence of [COVID-19] in the indoor air and on surfaces" at each of their hotels, "caused the loss, in whole or in part, of the functional use" of their hotels. Next, "physical loss or damage" was experienced through "the need to modify physical behaviors by social distancing, avoiding confined indoor spaces, and avoiding congregating in the same physical area as others . . . to reduce or minimize the potential for viral transmission."[17] Lastly, "the need to modify physical behaviors by social distancing, avoiding confined indoor spaces, and avoiding congregating in the same physical area as others . . . to reduce or minimize the potential for viral transmission" constituted physical loss and damage to the hotels.

---

[17] This claim addresses COVID-19's effect on the employees and customers, rather than the effect of COVID-19 on the physical building, the insured property to which physical loss or damage must occur to qualify for coverage under the insurance contracts.

Yet, appellants offer no rationale for why changes in operating procedures or cleaning policies would satisfy the general "physical loss or damage" provisions in their insurance policies. Those alleged harms resulting from appellants' chosen mitigation strategies do not amount to tangible destruction, either temporary or permanent, of the insured property itself. Nor do appellants adequately plead how the mere "presence" of COVID-19 "particles" in their hotels equates to physical loss or damage of their insured property. This Court finds no merit in appellants' unsupported assertion that "the[ir] building[s] ha[ve] been damaged because the virus invades and physically transforms the air and makes it unsafe for breathing." It should go without saying that appellants have no insurable interest in the air that passes through their properties.

Moreover, despite stating that "COVID-19's impact[] to . . . businesses in Virginia and across the United States cannot be overstated," appellants fail to provide any financial data showing how, or the extent to which, their properties were fiscally impacted by COVID-19.[18] According to the complaint, the need to limit hotel capacity during the pandemic caused the Southerly appellants to suffer financial losses because the hotel only derived "revenue from guest occupancy" and accompanying sales of "food and beverage[s]."

Appellant Our Town, on the other hand, alleged that it derived "revenue from management fees it receive[d] from Sotherly in exchange for the services it provide[d] the Hotels." Nothing in the complaint, however, demonstrates how these purely financial, and largely hypothetical, losses either represent or were caused by a physical loss or damage to hotel property, the tangible object insured by appellees. Therefore, based solely on the facts alleged in

---

[18] Appellants provide only one example of their quantitative losses: "[O]ccupany rates at the Hyatt Centric Arlington Hotel dropped to a mere 26.1% during 2020, far lower than the nation average [of 44%]."

appellants' pleadings, this Court finds that the complaint does not adequately establish a basis for coverage where appellants do not allege any tangible harm to their properties.[19]

III. Special Coverage Provisions

Appellants also allege the pleadings show they were entitled to coverage under special provisions of their policies that expand coverage beyond the "physical loss or damage" requirement. The specific provisions that appellants rely upon here are for Communicable Disease Coverage, Civil Authority Coverage, and Crisis Management Coverage under the Fireman's Fund Policy of the Main Program. As discussed below, this Court finds that appellants have not alleged facts sufficient to establish their entitlement to coverage under any of those provisions.

At the outset, this Court notes that some of those provisions in one or more of appellants' policies actually contain their own "physical loss or damage" requirement. Appellants thus cannot sustain a claim for coverage under any special provision with that requirement, for the reasons discussed in the section above regarding the pleading standard for "physical loss or damage."[20] Setting that issue aside, this Court finds that appellants have nevertheless failed to

---

[19] This finding should not be read as a blanket rule that COVID-19 can never result in physical loss or damage. Accordingly, appellants' reliance on non-binding cases from other states is misplaced—*Marina Pac. Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*, 81 Cal. App. 5th 96 (Cal. Ct. App. 2022), and *Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, 287 A.3d 515 (Vt. 2022)—and those cases merely contemplated the possibility of communicable diseases causing physical loss or damage under circumstances involving tangible damage to insured properties.

[20] Under the Main Program, the "extension of coverage" for a communicable disease event invokes the "physical loss or damage" language, as does the Civil Authority Coverage in all three programs. Each program also contains a narrower Business Income Coverage provision that covers loss of income or extra expense caused by suspension of the business's operations. Such suspension, however, must have been caused by "direct physical loss or damage" to the property. Accordingly, appellant has not established a claim under any of these provisions.

- 18 -

plead sufficient facts to establish the other elements required for coverage under these special provisions.

The Communicable Disease provision covers "direct physical loss or damage" due to a "covered communicable disease event." A communicable disease event is defined in the contract itself as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location."[21] Appellants seek to recover under this provision on the basis that they were required to "disinfect[] surfaces and materials" in their hotels. Yet, they do not cite to any order from a public health authority, let alone even name a public health authority, mandating any of their specific hotels be "evacuated, decontaminated, or disinfected." Under the plain language of appellants' insurance contracts, the Communicable Disease provisions do not obligate appellees to cover costs associated with a hotel's hygiene protocols *unless* that particular hotel was specifically directed to evacuate, decontaminate, or disinfect its property by a public health authority. Appellants have not alleged facts establishing that narrow exception and this Court refuses to read these contract provisions in any other way.[22]

---

[21] At oral argument, appellees explained that this category of coverage was created in response to Legionnaires' disease, which can physically compromise the water systems of a hotel. As appellees further pointed out, that coverage compensates for the costs of replacing such water systems, which are insured physical property; it does not provide general pandemic coverage associated with costs incurred to reduce the risks of airborne pathogens on the health of human customers or employees.

[22] The complaint states that "[executive] orders prohibited access to amenities" of appellants' hotels but fails to provide any proof of such orders. Nor does the complaint allege that any of appellants' hotels were ordered to shut down all business activities, thereby prohibiting access to a specific location, as required before seeking coverage under the Civil Authority provision. Instead, the complaint relies on broad and unsupported statements that do not sufficiently demonstrate eligibility for coverage under the insurance policies. This Court takes judicial notice that, in the states where appellants' hotels are located, no executive order specifically required appellants' hotels to shut down.

- 19 -

Similarly, the Civil Authority Coverage of the Main Program covers only "the actual loss of business income and necessary expenses . . . due to the necessary suspension of your operations caused by action of civil authority that prohibits access to a location."[23] Under this scenario, "suspension" of the hotels' operations must be the result of a direct order from a "civil authority that prohibits access to a location." Appellants first assert that COVID-19 "caused direct physical loss or damage to property throughout the cities where [their hotels were] located, and caused the deprivation of use of such property, including property within five miles of the hotels, giving rise to the actions of civil authority orders." Appellants then claim that "[t]hese orders prohibited access to amenities of the Sotherly Hotels."

There are two reasonable ways to interpret the Civil Authority provision. First, appellants could obtain coverage if their access to a location other than their own property was prohibited by the direct order of a civil authority *and* such lack of access caused a "necessary suspension" of operations at one of appellants' hotels. Second, coverage could be limited to situations in which a civil authority has specifically prohibited access to one of appellants' hotels, which thereby caused a "necessary suspension" of that property's operations. Under neither of these readings, however, have appellants alleged sufficient facts establishing entitlement to coverage. They do not cite to any civil authority order prohibiting access to either any of their own properties or any other location at which physical access was needed to prevent a suspension of appellants' own hotel operations.

Furthermore, appellants' arguments on brief regarding the Civil Authority provision focus on their entitlement to such coverage exclusively under the Fireman's Fund of the Main Program. Despite choosing to make such a limited claim, appellants nevertheless attempt to

---

[23] As already noted above, the "prohibition of access" must be caused by "physical loss or damage to property other than at such location." Appellant had not plead sufficient facts establishing such "physical loss or damage to property other than" their own hotels.

support their argument by citing to parts of the complaint that reference the Hyde Hollywood

Hotels, which are covered under the Hollywood Program, not the Main Program supported by

the Fireman's Fund.  This Court thus does not consider appellants' reference to the Hyde

Hollywood Hotels as support for the claim that they are entitled to coverage from the Fireman's

Fund under the Civil Authority provision.

Lastly, appellants argue that their alleged losses are covered by the Crisis Management

provision.  This contention is meritless based on the plain language used in the Main Program.

The Main Program unequivocally provides coverage for a crisis event only if it "results in

significant adverse regional or national news media coverage" of appellants or their properties.

Appellants make no allegations of being the subject of any significant regional or national news

coverage.  In the absence of any facts establishing that element, appellants cannot obtain

coverage under the Crisis Management provision.[24]

In sum, appellants contend that a few special coverage provisions of their insurance

policies entitle them to coverage for the alleged losses resulting from COVID-19.

Notwithstanding the fact that appellants cannot seek recovery under any provisions requiring a

---

[24] Although appellants also alleged that the Governor of Georgia issued several executive orders "which, among other things, ordered the Georgian Terrace Hotel to be disinfected as a result of . . . COVID-19[,]" such a statement does little to show that COVID-19 caused physical loss or damage to the property.  Moreover, appellants do not allege that those orders directed the closure of appellants' hotels in Georgia, which is a required component for receiving coverage under the Crisis Management provisions in the insurance policies.  Appellants stated only that they shut their Hyde Hollywood Hotels in Florida from March 25, 2020, until June 1, 2020, when they opened back up to limited capacity and revenues.

Although this Court can reasonably infer that the reason for the shutdown was somehow related to the pandemic, appellants offer no facts explaining why these specific hotels were closed, especially considering that the remainder of appellants' hotels did not.  The specific reasons for the shutdown, and resulting losses, matters because of the restrictions in appellants' insurance policies.  Yet, appellants' pleadings do not allege or provide any proof that the shutdown was mandated by a public health agency or civil authority, which is a necessary fact for claiming coverage under the policies' specialty provisions relating to communicable diseases like COVID-19.

showing of "physical loss or damage," the pleadings here do not allege sufficient facts to establish the other elements required for Communicable Disease Coverage, Civil Authority Coverage, or Crisis Management Coverage.  Because appellants do not claim coverage under any other special provision in their insurance contracts, this Court holds that the circuit court did not err in granting appellees' demurrer and dismissing the insufficient complaint.

CONCLUSION

Under the applicable standard of review, this Court finds appellants' complaint devoid of sufficient factual allegations to establish a breach of contract claim against appellees.  This Court reaches that conclusion based solely on the facts alleged herein and passes no judgment on the broader question of whether the parties' insurance contracts prohibit coverage for any type of COVID-related harms not sufficiently pled by appellants.  Rather, this Court finds only that appellants' pleadings in this case do not adequately allege coverable harms under either the general "physical loss or damage" requirement or the specified additional coverage provisions in the insurance policies.  Therefore, as a matter of law, appellants have not demonstrated that appellees breached any contractual obligation.  Accordingly, this Court affirms the circuit court's judgment sustaining appellees' demurrer and dismissing the case with prejudice.

*Affirmed*.